# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| INTERNATIONAL REFUGEE ASSISTANCE PROJECT, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, *et al.*, <br><br> Defendants. | Civil Action No. TDC-17-0361 |
| IRANIAN ALLIANCES ACROSS BORDERS, UNIVERSITY OF MARYLAND COLLEGE PARK CHAPTER, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, *et al.*, <br><br> Defendants. | Civil Action No. TDC-17-2921 |
| EBLAL ZAKZOK, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, *et al.*, <br><br> Defendants. | Civil Action No. TDC-17-2969 |

## MEMORANDUM OPINION

Defendants ("the Government") have filed a Motion to Stay Proceedings Pending Resolution of Preliminary-Injunction Appeals ("Motion to Stay") seeking a stay of Case Nos.

TDC-17-2921 and TDC-17-2969 pending the United States Supreme Court's resolution of *Trump v. Hawaii*, No. 17-965 (U.S. Jan. 19, 2018). Plaintiffs in those cases, Iranian Alliances Across Borders ("IAAB"), Doe Plaintiffs 1-6, and Iranian Students' Foundation (collectively, "the IAAB Plaintiffs") and Eblal Zakzok, Sumaya Hamadmad, Fahed Muqbil, and Doe Plaintiffs 1-3 (collectively, "the Zakzok Plaintiffs") oppose the Motion and have filed their own Motion for Entry of a Scheduling Order ("Motion for a Scheduling Order"). The Government has not moved to stay Case No. TDC-17-0361, and Plaintiffs in that case, International Refugee Assistance Project ("IRAP"), HIAS, Inc., Middle East Studies Association ("MESA"), Arab-American Association of New York ("AAANY"), Yemeni-American Merchants Association ("YAMA"), Doe Plaintiffs 1-5, Muhammed Meteab, Mohamad Mashta, Grannaz Amirjamshidi, Fakhri Ziaolhagh, Shapour Shirani, and Afsaneh Khazaeli (collectively, "the IRAP Plaintiffs") have not joined the Motion for a Scheduling Order. Having reviewed the briefs on the Motions, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion to Stay is GRANTED. The Court also stays consideration of Case No. TDC-17-0361 pending the Supreme Court's resolution of *Trump v. Hawaii*. The Motion for a Scheduling Order is DENIED WITHOUT PREJUDICE.

## BACKGROUND

On September 24, 2017, President Donald J. Trump issued Proclamation No. 9645, "Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry into the United States by Terrorists or Other Public-Safety Threats" (the "Proclamation"), 82 Fed. Reg. 45161 (Sept. 27, 2017). The Proclamation was the third iteration of the President's efforts to ban the entry of nationals from certain designated countries into the United States. *See* Exec. Order 13,769, "Protecting the Nation from Foreign Terrorist Entry into the United States" ("EO-1"), 82

Fed. Reg. 8977 (Jan. 27, 2017); Exec. Order 13,780, "Protecting the Nation from Foreign Terrorist Entry into the United States" ("EO-2"), 82 Fed. Reg. 13209 (Mar. 9, 2017). The IRAP Plaintiffs, later joined by the IAAB and Zakzok Plaintiffs, moved for preliminary injunctive relief from the Proclamation. On October 17, 2017, the Court granted a preliminary injunction that barred the enforcement of most provisions in Section 2 of the Proclamation, except with respect to those individuals who lack a bona fide relationship with a person or entity in the United States. *Int'l Refugee Assistance Project ("IRAP") v. Trump*, 265 F. Supp. 3d 570, 633 (D. Md. 2017), *aff'd* 883 F.3d 233 (4th Cir. 2018).

The Government requested that the Supreme Court stay enforcement of the preliminary injunction, as well as an injunction imposed by the United States District Court for the District of Hawaii in *Hawaii v. Trump*, 265 F. Supp. 3d 1140, 1161 (D. Haw. 2017), *aff'd in part, vacated in part*, 878 F.3d 662 (9th Cir. 2017). Appl. for Stay, *Trump v. Hawaii*, No. 17-965 (U.S. Nov. 20, 2017). On December 4, 2017, the Supreme Court stayed the injunctions pending disposition of the cases by the United States Courts of Appeals for the Fourth and Ninth Circuits, as well as pending any review of the circuit court rulings by the Supreme Court. *Trump v. IRAP*, 138 S. Ct. 542 (2017); *Trump v. Hawaii*, 138 S. Ct. 542 (2017). On December 22, 2017, the Ninth Circuit affirmed the preliminary injunction entered by the District of Hawaii, but stayed its ruling in light of the Supreme Court's December 4, 2017 stay order. *Hawaii v. Trump*, 878 F.3d 662, 702 (9th Cir. 2017). The Supreme Court granted the Government's petition for a writ of certiorari in that case and will hear oral argument on April 25, 2018. *Trump v. Hawaii*, 138 S. Ct. 923 (2018). In *Trump v. Hawaii*, the Supreme Court will consider (1) whether the "challenge to the President's suspension of entry of aliens abroad is justiciable"; (2) "[w]hether the Proclamation is a lawful exercise of the President's authority to suspend entry of aliens abroad"; (3) "[w]hether

the global injunction is impermissibly overbroad"; and (4) whether the Proclamation violates the Establishment Clause. *Id.*; Pet. Writ Cert. at I, *Trump v. Hawaii*, No. 17-965, 2018 WL 333818 (U.S. Jan. 5, 2018); Br. Opp'n at i, *Trump v. Hawaii*, No. 17-965, 2018 WL 417995 (U.S. Jan. 12, 2018).

In the cases before this Court, the Government filed the Motion to Stay on January 19, 2018. The IAAB Plaintiffs and Zakzok Plaintiffs (collectively, "Plaintiffs") filed their Motion for a Scheduling Order on February 2, 2018. Although the IRAP Plaintiffs have not taken a position on either motion, they have requested that the Court allow them to participate in discovery if the Motion to Stay is denied and the Motion for a Scheduling Order is granted.

On February 15, 2018, the Fourth Circuit affirmed this Court's grant of a preliminary injunction but also stayed its decision in light of the Supreme Court's stay. *IRAP v. Trump*, 883 F.3d 233, 274 (4th Cir. 2018). On March 9, 2018, the Government filed a petition for a writ of certiorari that is currently pending before the Supreme Court. Pet. Writ Cert., *Trump v. IRAP*, No. 17-1270, 2018 WL 1419884 (U.S. Mar. 9, 2018).

## DISCUSSION

In its Motion to Stay, the Government seeks a stay on the grounds that (1) the Supreme Court's resolution of *Trump v. Hawaii* will likely provide dispositive guidance on some or all of the issues in this case; (2) other courts hearing challenges to the Proclamation and other versions of the travel ban have stayed district court proceedings pending a ruling from the Supreme Court; and (3) the Supreme Court might resolve the merits of Plaintiffs' claims, eliminating the need for further district court proceedings. The Government further argues that, at a minimum, this case should not proceed to discovery because (1) appellate decisions will likely provide important

4

guidance regarding the scope of discovery; (2) Plaintiffs have not justified a need for immediate discovery; and (3) the requested stay is reasonable in length and will not prejudice Plaintiffs.

Plaintiffs oppose the Motion to Stay, arguing that a stay would cause further injury in the form of prolonged separation from family members, some of whom are elderly, very ill, or at risk of persecution. They claim that the prospect of the Supreme Court deciding the merits of their claims is speculative, and, in any event, their free speech, equal protection, due process, free association, and Administrative Procedure Act ("APA") claims are not before the Supreme Court. Plaintiffs also argue that the Government has not shown that it will be significantly burdened without a stay. They instead request to move forward with discovery now, regardless of whether a motion to dismiss is filed, and assert that discovery can initially be limited to (1) obtaining two reports with attachments submitted by the Secretary of Homeland Security to the President, identified in Sections 1(c) and 1(h) of the Proclamation; (2) receiving materials related to procedures used by government officials to implement the waiver process described in Section 3(c) of the Proclamation; and (3) responding to Government requests relating to the extent of Plaintiffs' injuries. Plaintiffs acknowledge the prospect of contested discovery but argue that the specter of discovery disputes necessitates that the discovery process begin sooner rather than later, to account for any attendant delays.

I. **Legal Standard**

"[T]he power to stay proceedings is incidental to the power in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). The exercise of this power is especially important "in cases of extraordinary public moment" where a party "may be required to submit to delay not immoderate in extent and not oppressive in its consequences if the public

welfare or convenience will thereby be promoted." *Clinton v. Jones*, 520 U.S. 681, 707 (1997) (*quoting Landis*, 299 U.S. at 256)). Nevertheless, the burden of showing the necessity for a stay rests with the moving party, and is heightened when a stay will "work damage" to another party. *Landis*, 299 U.S. at 255. "The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983).

When considering a discretionary motion to stay, courts typically examine three factors: (1) the impact on the orderly course of justice, sometimes referred to as judicial economy, measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected from a stay; (2) the hardship to the moving party if the case is not stayed; and (3) the potential damage or prejudice to the non-moving party if a stay is granted. *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005); *see also, e.g., Mullins v. Suburban Hosp. Healthcare Sys., Inc.*, No. PX-16-1113, 2017 WL 3023282, at *1 (D. Md. July 17, 2017); *Davis v. Biomet Orthopedics, LLC*, No. 12-3738-JKB, 2013 WL 682906, at *1 (D. Md. Feb. 22, 2013); *Washington v. Trump*, No. 17-0141-JLR, 2017 WL 2172020, at *2 (W.D. Wash. May 17, 2017) (*citing Lockyer*); *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044, 1049 (E.D. Wisc. 2001).

## II.   Judicial Economy

The mere filing of an appeal of a preliminary injunction "does not divest the trial court of jurisdiction or prevent it from taking other steps in the litigation while the appeal is pending," including proceeding to discovery and a trial on the merits. *Contour Design, Inc. v. Chance Mold Steel Co., Ltd.*, 649 F.3d 31, 34 (1st Cir. 2011) (quoting 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2962 (3d ed. 2013)). However, in cases

where the validity of a preliminary injunction was before the circuit court or the Supreme Court, district courts have at times stayed proceedings for reasons of judicial economy. In *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014), for example, when the district court's denial of a preliminary injunction to block the enforcement of the contraceptive mandate in the Patient Protection and Affordable Care Act of 2010 was appealed, *id.* at 2766, the district court granted the parties' joint motions to stay the case pending decisions from the Tenth Circuit and, later, the Supreme Court. *See* Joint Mot. Stay, *Hobby Lobby Stores, Inc. v. Sebelius*, No. CIV-12-1000-HE (W.D. Okla. Dec. 10, 2012) (ECF No. 54) (stating that it would be "inefficient to concurrently litigate"); Joint Mot. Stay, *Hobby Lobby Stores*, No. CIV-12-1000-HE (ECF No. 83). Likewise, in *Arizona v. United States*, 567 U.S. 387 (2012), the district court entered a preliminary injunction preventing four sections of an Arizona immigration law from taking effect, *id.* at 394, then granted a joint motion to stay until the Supreme Court issued its final decision. Civil Mins., *United States v. Arizona*, No. 10-1413-PHX-SRB (D. Ariz. Apr. 1, 2011) (ECF No. 147); Joint Statement, *United States v. Arizona*, No. 10-1413-PHX-SRB (D. Ariz. May 11, 2011) (ECF No. 160); *see also* Order, *ACLU v. Ashcroft*, No. 98-5591-LR (E.D. Pa. Apr. 16, 1999) (ECF No. 140) (staying a case pending a ruling on the appeal of a preliminary injunction enjoining enforcement of the Child Online Protection Act, 47 U.S.C. § 231), *prelim. inj. aff'd* 542 U.S. 656 (2004).

On the particular issue of the President's Proclamation, district courts around the nation have uniformly stayed their proceedings until the Supreme Court rules on the Ninth Circuit's decision in *Hawaii v. Trump*, 878 F.3d 662 (9th Cir. 2017), *cert. granted*, 138 S. Ct. 923 (2018). In many of these cases, the parties jointly agreed to a stay. *See* Order, *Ali v. Trump*, No. 17-cv-0135-JLR (W.D. Wash. Jan 23, 2018) (ECF No. 106) (granting a stipulated motion from the

parties to stay the case until after the Supreme Court's ruling on the Proclamation); Order, *Sarsour v. Trump*, No. 17-cv-0120-AJT (E.D. Va. Jan. 9, 2018) (ECF No. 50) (same); Stipulated Order, *Arab Am. Civil Rights League v. Trump*, No. 17-cv-10310-VAR (E.D. Mich. Dec. 7, 2017) (ECF No. 121) (same); Joint Agreement to Stay, *Universal Muslim Assoc. of Am. v. Trump*, No. 17-cv-0537-TSC (D.D.C. Nov. 3, 2017) (ECF No. 55) (noting that staying the action in the district court "promotes judicial efficiency"). Although the District of Hawaii has not officially stayed its case, no action has been taken since the Proclamation was enjoined on October 17, 2017. *See* Docket, *Hawaii v. Trump*, No. 17-cv-0050-DKW (D. Haw. filed Feb. 3, 2017).

In two of these cases, courts have granted a stay over the objection of the plaintiff. *See* Order at 7-8, *Pars Equality Ctr. v. Trump*, No. 17-cv-0255-TSC (D.D.C. Mar. 2, 2018) (ECF No. 143) (denying plaintiffs' motion to set a case management schedule and staying the case pending the Supreme Court's ruling on the Proclamation); *Washington v. Trump*, No. 17-cv-0141-JLR, 2017 WL 4857088, at *7-8 (W.D. Wash. Oct. 27, 2017) (staying consideration of a pending motion for a temporary restraining order to enjoin the Proclamation until the Ninth Circuit ruled on the matter). In one case, the court granted the stay in part because of the "substantial overlap between the legal issues in [the] case and those before the Supreme Court." Order at 7-8, *Pars Equality Ctr.*, No. 17-cv-0255-TSC. In another, the district court cited the "potential for inconsistent rulings and resulting confusion to law enforcement agencies and the public" from a pronouncement on this issue while it is pending on appeal. *Washington*, 2017 WL 4857088 at *7-8; *see also Arab Am. Civil Rights League v. Trump*, No. 17-10310-VAR, 2017 WL 2501060, at *2 (E.D. Mich. June 9, 2017) (granting a contested motion for a stay of the Second Executive Order in part because the legal standard for evaluating EO-2 was "not well settled"). Although

several of the stay orders, both contested and uncontested, pre-date the Supreme Court's December 4, 2017 stay of the preliminary injunctions ordered by this Court and the District of Hawaii, in none of those cases have the plaintiffs since sought to revisit the stay of district court proceedings.

Here, this Court concludes that judicial economy will be served by a stay of this case because the resolution of the issues before the Supreme Court will likely have a direct impact on the future course of the case, including on the next decisions this Court must make. As previously noted, among the issues the Supreme Court will consider are (1) whether the challenge to the Proclamation is justiciable; (2) whether the Proclamation is a lawful exercise of the President's statutory authority to suspend entry of aliens; (3) and whether the Proclamation violates the Establishment Clause. *See Trump v. Hawaii,* 138 S. Ct. 923 (2018); Pet. Writ Cert. at I, *Trump v. Hawaii*, No. 17-965, 2018 WL 333818 (U.S. Jan. 5, 2018); Br. Opp'n at i, *Trump v. Hawaii*, No. 17-965, 2018 WL 417995 (U.S. Jan. 12, 2018). First, where the questions presented are framed not in terms of Plaintiffs' likelihood of success on them, but as specific legal questions to be resolved by the Supreme Court, there is the potential that the Supreme Court will resolve them on the merits. *See, e.g., Hobby Lobby*, 134 S. Ct. at 2765, 2785; (resolving the merits of legal issues in an appeal of a motion for a preliminary injunction); *Arizona*, 567 U.S. at 416 (same).

Second, in the absence of a stay, the next step in these cases would be for the Government to file either an answer or a motion to dismiss. *See* Fed. R. Civ. P. 12. The Government has stated its intention to file a motion to dismiss in which it will assert several threshold bases for dismissal relating to justiciability, including that immigration exclusion decisions are non-reviewable and that Plaintiffs lack standing. Beyond these threshold questions,

the Government also plans to assert that Plaintiffs have failed to state a viable statutory claim under the Immigration and Nationality Act ("INA") or constitutional claim under the Establishment Clause. Although this Court ruled on these issues in resolving the Motion for a Preliminary Injunction, and it has controlling guidance on the constitutional claim from the Fourth Circuit, which ruled that the Establishment Clause claim is justiciable and that the Proclamation likely violates the Establishment Clause, *IRAP*, 883 F.3d at 257, 269-70, and persuasive authority from the Ninth Circuit on the justiciability and viability of the statutory claims, *see Hawaii*, 878 F.3d at 678, 694, 697-98, the Government continues to contest these issues in the Supreme Court. Thus, waiting for the Supreme Court to rule would likely simplify this Court's task in resolving a motion to dismiss, while moving forward without a stay would likely result in a ruling by this Court that would be subject to revisitation and potential modification.

For example, where the Government would likely make the same justiciability challenges in a motion to dismiss that it has asserted before the Supreme Court, the Court's determination of these issues would not be definitive until after the Supreme Court rules and, in all likelihood, until after one party or the other seeks reconsideration of this Court's rulings on the justiciability issues in light of the new Supreme Court guidance. Likewise, any ruling on a motion to dismiss on whether Plaintiffs have a plausible claim that the President exceeded his statutory authority under the INA would be effectively provisional and thus inefficient. While neither this Court's issuance of the preliminary injunction nor the Fourth Circuit's upholding of it relied on Plaintiffs' INA claims, the INA was the basis for the decisions of both the District of Hawaii and the Ninth Circuit, whose opinion is now squarely before the Supreme Court. With the Supreme Court poised to answer the questions of law on the INA claims in *Trump v. Hawaii*, which

10

largely if not entirely map onto the INA claims here, it would be a waste of scarce resources for this Court to resolve a motion to dismiss on these claims at this time.

As for the Government's arguments for dismissal of an Establishment Clause claim, this Court's analysis would be informed by any Supreme Court guidance on the proper standard for reviewing such a claim. In enjoining the Proclamation on the basis that Plaintiffs were likely to succeed on their claim that it violated the Establishment Clause, this Court relied on the Fourth Circuit's analysis and application of the holding of *Kleindienst v. Mandel*, 408 U.S. 753 (1972), first set forth in the Fourth Circuit opinion affirming this Court's preliminary injunction of EO-2 and restated in its opinion affirming the preliminary injunction on the Proclamation. *See IRAP v. Trump*, 857 F.3d 554, 588-91 (4th Cir. 2017), *vacated as moot by* 138 S. Ct. 353 (2018); *IRAP*, 883 F.3d at 263-64; *IRAP*, 265 F. Supp. 3d at 617. The Fourth Circuit interpreted *Mandel* and *Kerry v. Din,* 135 S. Ct. 2128, 2139-41 (20150 (Kennedy, J. concurring), as establishing that courts review constitutional challenges to immigration determinations for whether they are supported by a "facially legitimate and bona fide reason," *Mandel*, 408 U.S. at 770, and, in applying that standard, allowed for a more searching review when there is evidence of bad faith by the decisionmaker, which would call into question whether the "facially legitimate" reason was "bona fide." *IRAP*, 883 F.3d at 263-64. In the Establishment Clause context, a court would then apply the traditional analysis under *Lemon v. Kurtzmann.* 403 U.S. 602, 612-13 (1971). *IRAP*, 883 F.3d at 265. In addressing the question whether the Proclamation violates the Establishment Clause, the Supreme Court undoubtedly must consider whether and how *Mandel* and *Lemon* apply to this question. Under these circumstances, it would be highly inefficient for this Court to evaluate the viability of Plaintiffs' Establishment Clause claims until the Supreme Court provides guidance on this question.

Plaintiffs note that they have additional claims not under review by the Supreme Court, such as distinct statutory claims under the APA and constitutional claims under the free speech and free association clauses of the First Amendment and the equal protection and due process components of the Fifth Amendment. However, the justiciability arguments asserted by the Government in the Supreme Court are, or arguably could be, applicable to some or all of these additional claims. Likewise, the Supreme Court's determination of whether and how *Mandel* applies to the Establishment Clause claim would likely inform any consideration of the viability of other constitutional challenges to the Proclamation. *See, e.g., Mandel*, 408 U.S. at 770 (applying the "facially legitimate and bona fide reason" standard to a First Amendment free speech challenge to a visa determination); *Fiallo v. Bell*, 430 U.S. 787, 795 (1977) (applying *Mandel* to an equal protection challenge to an immigrant visa determination).

Thus, where the Supreme Court may shortly provide definitive guidance on key legal questions that could impact the viability of some or all of the claims asserted by Plaintiffs, considerations of judicial economy strongly counsel in favor of a stay. *See Lockyer*, 398 F.3d at 1110; *Landis*, 299 U.S. at 256 (noting that a stay was appropriate even though a different case on appeal would "not settle every question of fact and law," when it appeared that a decision in the other case would "settle many [issues] and simplify them all"). To consider and resolve a motion to dismiss in advance of the Supreme Court's decision would be inefficient, regardless of whether that decision proves to be consistent or inconsistent with this Court's ruling on such a motion, because one or more parties would undoubtedly and justifiably seek re-litigation of the motion in light of the new guidance.

In light of this reality, Plaintiffs alternatively argue that rather than consider a motion to dismiss, this Court should simply permit the parties to commence discovery. However, in the

normal practice of this District, discovery does not commence until after resolution of a motion to dismiss. The reason for this general practice is sensible: a court's ruling on a motion to dismiss may assist in defining the contours of discovery. The Court presently does not see any persuasive reason to deviate from this path. Because, as discussed above, there are questions relating to all aspects of this case—its justiciability, its statutory basis, and its constitutional basis—presently before the Supreme Court, allowing discovery to proceed would likely not quicken the pace of this case, but instead bog it down in motions practice, with the parties essentially relitigating unsettled legal questions through discovery. Whether documents such as the reports sought by Plaintiffs must be produced in discovery likely depends on both the justiciability of Plaintiffs' claims and the applicable review standard for constitutional claims, to be defined by the Supreme Court. *See In re United States*, 138 S. Ct. 443, 445 (2017) (stating that the district court should have deferred ordering the production of documents for completion of the administrative record until after it had ruled on the Government's threshold arguments for dismissal). Until the legal landscape is charted by the Supreme Court, discovery will be a fraught enterprise, steeply taxing both the parties and this Court. While such an expenditure of resources might be necessary if resolution of this case by the Supreme Court was remote in time, *see Landis*, 299 U.S. at 256 (rejecting a stay that threatened to stretch over two years while parallel appellate proceedings unfolded), in light of the briefing and argument schedule implemented by the Supreme Court, a decision will likely be issued by the end of June 2018, resulting in a total delay in the case of approximately six months. In light of all of these considerations, the Court concludes that judicial economy weighs strongly in favor of a stay.

## III. Harm to the Government

On the factor of the hardship to the moving party if the case is not stayed, the Court does not find that potential prejudice to the Government provides a compelling basis for a stay. Although a denial of a stay will require the Government to expend resources in litigation, where the Government unilaterally adopted a sweeping Proclamation affecting millions of individuals across multiple nations and the American family members and other interested parties to whom those individuals are connected, it is not unfair to expect that the Government would be required to devote significant resources to litigation defending its action. Moreover, unlike certain private parties, the Government has the resources to litigate without significant hardship or prejudice. Accordingly, this factor does not weigh in favor of a stay.

## IV. Harm to Plaintiffs

The potential harm or prejudice to Plaintiffs resulting from a stay is more significant. For example, Plaintiff Sumaya Hamadmad's father-in-law is currently in Syria, is 81-years-old, and has been diagnosed with cancer. Another individual Plaintiff is 79-years-old and wheelchair bound, and she and her 90-year-old husband are separated from their son, who is currently in Iran. At least two relatives of individual Plaintiffs, currently residing in Turkey and Kuwait, respectively, are at risk of being returned to Syria, where they could face persecution. Another individual Plaintiff's husband lives in the United Arab Emirates but is at risk of being returned to Iran, where he could be subjected to persecution. The Proclamation has thus separated children from parents and husbands from wives, perhaps forever, and it has increased the risk that Plaintiffs' family members could face persecution. These "human aspects" of the potential impact of a stay upon Plaintiffs are of "particular significance in balancing the competing interests of the parties." *Williford*, 715 F.2d at 127-28. Thus, this factor weighs against a stay.

## V. Balance of Factors

On balance, however, the Court concludes that the orderly course of justice requires that all three cases be stayed pending the Supreme Court's resolution of *Trump v. Hawaii*. The Court reaches this conclusion not because factors of judicial economy are more important than the potential harm to Plaintiffs, but because the Court is convinced that proceeding with this case now does not necessarily mean that Plaintiffs will receive a faster resolution. As noted above, the immediate litigation of a motion to dismiss, the next step in this case, would likely be wasted once the Supreme Court issues its ruling in *Trump v. Hawaii*, because a renewed round of briefing would almost certainly be required to allow for proper consideration of the Supreme Court's guidance, leaving the parties no closer to a resolution than if the matter were stayed. Furthermore, the lack of final resolution on the applicable law would likely prolong and burden the discovery process, such that commencement of discovery at this point may prove less, rather than more, efficient. The Court concludes that a more appropriate way to address the ongoing harm to Plaintiffs would be to proceed with the case on an expedited basis following the Supreme Court's decision, in the event that the preliminary injunction is not reinstated.

Thus, in granting a stay, the Court offers two qualifications. First, the Court's ruling is based on the assumption that the Supreme Court will issue a decision by the end of June 2018, approximately two months from now, resulting in a total stay of approximately six months. The Court's Order will therefore impose a stay until the issuance of the Supreme Court's decision in *Trump v. Hawaii* or June 30, 2018, whichever comes first. If no opinion is issued in that time frame, the parties may renew their respective motions. Second, in order to mitigate the harm of a stay to Plaintiffs, in the event that the Supreme Court's decision does not result in a reinstatement of the preliminary injunction, the Court will proceed with these cases on an

expedited basis, which may include steps such as shortening the typical time periods for briefing motions, responding to discovery requests, and completing all discovery.

## CONCLUSION

For the foregoing reasons, the Motion for a Stay is GRANTED. *International Refugee Assistance Project v. Trump*, TDC-17-0361; *Iranian Alliances Across Borders v. Trump*, TDC-17-2921; and *Zakzok v. Trump*, TDC-17-2969 will be STAYED until the earlier of the issuance of the Supreme Court's decision in *Trump v. Hawaii*, No. 17-965 (U.S. Jan. 19, 2018), or June 30, 2018. The Motion for a Scheduling Order is DENIED WITHOUT PREJUDICE. A separate Order shall issue.

Date: April 24, 2018

THEODORE D. CHUANG
United States District Judge