# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### SOUTHERN DIVISION

| | |
|---|---|
| INTERNATIONAL REFUGEE ASSISTANCE PROJECT, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*<br><br>Defendants. | Civil Action No.: 17-cv-361<br>Judge Chuang |
| IRANIAN ALLIANCES ACROSS BORDERS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*<br><br>Defendants. | Civil Action No.: 17-CV-2921<br>Judge Chuang |
| EBLAL ZAKZOK, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>Defendants. | Civil Action No.: 17-CV-2969<br>Judge Chuang |

## PLAINTIFFS' COMBINED OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................ 2

    A.    Plaintiffs' Complaints ............................................................................. 2

    B.    Preliminary Injunction Proceedings........................................................ 7

ARGUMENT ................................................................................................................... 10

I.    Plaintiffs Have Standing To Bring Their Claims............................................. 10

II.    Plaintiffs Have Adequately Alleged That The Proclamation Is Unconstitutional............ 12

    A.    The *Hawaii* Ruling Does Not Foreclose Plaintiffs' Claims................................. 14

        1.    The Supreme Court's Ruling, Based On The Preliminary Evidentiary Record, Does Not Bar Plaintiffs From Litigating Their Claims On The Merits.............................................. 14

        2.    The Court Should Look Behind The Face Of The Proclamation To Decide Its Constitutionality, Just As The Supreme Court Did. ................ 18

    B.    Defendants' Additional Arguments Also Fail. .................................................... 20

III.    Plaintiffs May Obtain Review Of The Proclamation Under The APA. .......................... 22

    A.    The Proclamation Is Subject To Review Under The APA. .................................. 23

        1.    Defendants Provide No Reason For The Court To Depart From Its Prior Ruling On These Issues. ................................................. 23

        2.    The Court May Not Dismiss Plaintiffs' APA Claims For Lack Of Merit........................................................................ 27

    B.    The Doctrine of Consular Nonreviewability Remains Inapplicable..................... 30

CONCLUSION ................................................................................................................ 32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abebe v. Perez*,
   No. 3:14-CV-4415, 2016 WL 454897 (D.S.C. Feb. 5, 2016)..................................................21

*Ali v. United States*,
   849 F.3d 510 (1st Cir. 2017) ..................................................................................................21

*Allen v. Wright*,
   468 U.S. 737 (1984)................................................................................................................22

*Am. Bioscience, Inc. v. Thompson*,
   269 F.3d 1077 (D.C. Cir. 2001) ............................................................................................27

*Ancient Coin Collectors Guild v. U.S. Customs and Border Protection*,
   801 F. Supp. 2d 383 (D. Md. 2011) ......................................................................................24

*Andreas-Myers v. Nat'l Aeronautics & Space Admin.*,
   No. GJH-16-3410, 2017 WL 1632410 (D. Md. Apr. 28, 2017) ............................................28

*Armstrong v. Exceptional Child Ctr., Inc.*,
   135 S. Ct. 1378 (2015)...........................................................................................................24

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...............................................................................................................13

*Benisek v. Lamone*,
   138 S. Ct. 1942 (2018)...........................................................................................................14

*Burnette v. Fahey*,
   687 F.3d 171 (4th Cir. 2012) ................................................................................................20

*Ching v. Mayorkas*,
   725 F.3d 1149 (9th Cir. 2013) ..............................................................................................20

*City of New York v. Permanent Mission of India to United Nations*,
   618 F.3d 172 (2d Cir. 2010)..................................................................................................29

*Dames & Moore v. Regan*,
   453 U.S. 654 (1981)...............................................................................................................24

*Doe v. Trump*,
   288 F. Supp. 3d 1045, 1077 (W.D. Wash. 2017)..................................................................29

iii

*Electricities of N.C., Inc. v. Se. Power Admin.*,
   774 F.2d 1262 (4th Cir. 1985) ...........................................................................25

*Franklin v. Massachusetts*,
   505 U.S. 788 (1992)............................................................................................24

*Giarratano v. Johnson*,
   521 F.3d 298 (4th Cir. 2008) .............................................................................12

*Hamama v. Adducci*,
   --- F. Supp. 3d ----, No. 17-cv-11910, 2018 WL 6060489 (E.D. Mich. Nov.
   20, 2018) .............................................................................................................17

*IRAP v. Trump*,
   265 F. Supp. 3d 570 (D. Md. 2017) ........................................................ *passim*

*IRAP v. Trump*,
   No. 17-cv-000361, Dkt. No. 257 (D. Md. filed June 28, 2018)............................10

*Jerri's Ceramic Arts, Inc. v. Consumer Prod. Safety Comm'n*,
   874 F.2d 205 (4th Cir. 1989) .............................................................................28

*Kerry v. Din*,
   135 S. Ct. 2128 (2015) .............................................................................19, 20, 21

*Kleindienst v. Mandel*,
   408 U.S. 753 (1972)...................................................................8, 18, 19, 20

*U.S. ex rel. Knauff v. Shaughnessy*,
   338 U.S. 537 (1950)............................................................................................32

*Kohrens v. Evatt*,
   66 F.3d 1350 (4th Cir. 1995) .............................................................................10

*Kravitz v. U.S. Dep't of Commerce*,
   --- F. Supp. 3d ---, 2018 WL 4005229 (D. Md. Aug. 22, 2018)............................25

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
   567 U.S. 209 (2012)............................................................................................26

*Merrifield v. Lockyer*,
   547 F.3d 978 (9th Cir. 2008) .............................................................................15

*Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*,
   948 F. Supp. 2d 538 (D. Md. 2013) ...................................................................14

*Morfin v. Tillerson*,
   851 F.3d 710 (7th Cir. 2017) .............................................................................21

*Moss v. Spartanburg Cty. Sch. Dist. Seven*,
   683 F.3d 599 (4th Cir. 2012) ............................................................................11

*New York v. U.S. Dep't of Commerce*,
   No. 18-cv-2921, 2018 WL 5791968 (S.D.N.Y. Nov. 5, 2018)..............................18

*Ramos v. Nielsen*,
   No. 18-cv-1554, 2018 WL 4778285 (N.D. Cal. Oct. 3, 2018) ..............................18

*Romer v. Evans*,
   517 U.S. 620 (1996)............................................................................................15

*Sale v. Haitian Ctrs. Council*,
   509 U.S. 155 (1993)................................................................................25, 31, 32

*St. Joseph Abbey v. Castille*,
   712 F.3d 215 (5th Cir. 2013) .............................................................................15

*Struniak v. Lynch*,
   159 F. Supp. 3d 643, 663 (E.D.V.A. 2016) .........................................................21

*Styrene Info. & Research Ctr., Inc. v. Sebelius*,
   944 F. Supp. 2d 71 (D.D.C. 2013).......................................................................27

*Texas v. United States*,
   809 F.3d 134 (5th Cir. 2015) .............................................................................29

*Trump v. Hawaii*,
   138 S. Ct. 2392 (2018)................................................................................ *passim*

*U.S. Dep't of Health & Human Servs. v. Fed. Labor Relations Auth.*,
   983 F.2d 578 (4th Cir. 1992) .............................................................................10

*United States v. Carolene Prods. Co.*,
   304 U.S. 144 (1938)............................................................................................15

*Wilkinson v. Austin*,
   545 U.S. 209 (2005)............................................................................................20

*Yassini v. Crosland*,
   618 F.2d 1356 (9th Cir. 1980) .....................................................................29, 30

*Zadvydas v. Davis*,
   533 U.S. 678 (2001)............................................................................................17

*Zhang v. Slattery*,
   55 F.3d 732 (2d Cir. 1995)..................................................................................30

**Statutes**

5 U.S.C. § 553...........................................................................................................28, 29

5 U.S.C. § 702................................................................................................................26

5 U.S.C. § 706................................................................................................................23

8 U.S.C. § 1101..............................................................................................................30

8 U.S.C. § 1152................................................................................................................9

8 U.S.C. § 1154..............................................................................................................20

8 U.S.C. § 1182.....................................................................................................9, 21, 25

**Other Authorities**

82 Fed. Reg. 45,161 (Sept. 27, 2017) ............................................................................1

Federal Rule of Civil Procedure 12(b)(6) .....................................................................12

Federal Rule of Civil Procedure 26(f) ...........................................................................32

Proclamation No. 9645, "Enhancing Vetting Capabilities and Processes for
    Detecting Attempted Entry into the United States by Terrorists or Other
    Public Safety Threats," ..............................................................................................1

## INTRODUCTION

The Supreme Court's decision in *Trump v. Hawaii*, 138 S. Ct. 2392 (2018), confirms that Plaintiffs may continue litigating their challenges to the validity of Proclamation No. 9645, "Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry into the United States by Terrorists or Other Public Safety Threats," 82 Fed. Reg. 45,161 (Sept. 27, 2017). The Supreme Court did not agree with any of Defendants' threshold legal arguments for avoiding review of the merits of the *Hawaii* plaintiffs' claims. Instead, the Court addressed the merits of both the statutory and the Establishment Clause claims and, on the latter, weighed the limited evidence in the record and decided that the plaintiffs had simply not carried their burden of proof on their motion for preliminary injunctive relief. Had the Supreme Court thought that the *Hawaii* plaintiffs had failed even to state a claim, or that it was not possible for them to ultimately succeed, it would have said so. But instead, after making its fact-bound determination on the constitutional claim, the Supreme Court remanded for further proceedings.

Defendants' motion is premised on a fundamental misunderstanding of the effect of a preliminary injunction ruling. In Defendants' view, the Supreme Court's rejection of two specific statutory claims at issue there (but no longer present in the instant cases) and its holding that "plaintiffs have not demonstrated a likelihood of success on the merits of their constitutional claim," 138 S. Ct. at 2423, means that the government has already prevailed here, and thus the Court must dismiss all of Plaintiffs' claims. But preliminary injunction proceedings result in preliminary rulings. That is why the Supreme Court concluded only that the *Hawaii* plaintiffs had not shown that they were likely to prevail, not that Defendants had definitively established the constitutionality of the Proclamation. Importantly, the Supreme Court's ruling was based on a limited evidentiary record—created without the benefit of discovery—and thus does not dictate how this Court should rule on similar claims based on a full evidentiary record following discovery.

1

Defendants failed at every step of the preliminary injunction proceedings to convince courts not to review the Proclamation to determine its constitutionality. In holding that Plaintiffs were likely to succeed on their Establishment Clause claims, this Court and the Fourth Circuit rejected all of Defendants' justiciability arguments. And in *Hawaii*, the Supreme Court also concluded that it could review the legality of the Proclamation. Defendants rehash many of the same justiciability arguments in moving to dismiss these complaints, but they offer no reason for the Court to depart from its prior ruling on these issues.

Defendants also argue that Plaintiffs' claims under the Administrative Procedure Act ("APA") should be dismissed, but this Court has already rejected Defendants' arguments. The Court held that Plaintiffs could bring a claim under the APA to invalidate the Proclamation as exceeding the President's authority under the Immigration and Nationality Act ("INA"). Although the Supreme Court rejected that claim as a matter of statutory interpretation, the fact that it reached the merits of that claim demonstrates that Plaintiffs' remaining APA claims are justiciable.

In short, Plaintiffs' claims are not foreclosed simply because the Supreme Court ruled, based on a limited evidentiary record, that the *Hawaii* plaintiffs had not shown they were likely to prevail on the merits of their claims. Plaintiffs have stated constitutional and APA claims. They are entitled to conduct discovery and prove those claims.

## BACKGROUND

### A.    Plaintiffs' Complaints

Plaintiffs in these three cases consist of 20 individuals and 7 organizations who allege that the Proclamation is unlawful and its enforcement should be permanently enjoined. Following amendment of the *IAAB* and *Zakzok* complaints and the notice that the *IRAP* Plaintiffs were voluntarily dismissing four of their claims, *IRAP* Dkt. No. 268, the following claims remain: all three

sets of Plaintiffs allege that the Proclamation violates the Establishment Clause[1] and that its implementation violates the APA's procedural and substantive requirements.[2] The *IRAP* and *IAAB* Plaintiffs also allege that the Proclamation violates the equal protection and procedural due process guarantees of the Fifth Amendment.[3] The *IAAB* Plaintiffs further assert freedom of speech and association claims under the First Amendment.[4]

1. The individual Plaintiffs in this litigation are U.S. citizens and lawful permanent residents whose relatives—including spouses, parents, and children—are unable to enter the United States because of the Proclamation. Plaintiffs include individuals who are ill, or who have gravely ill relatives, and are seeking urgent family reunification that is prevented by the Proclamation. *IRAP* SAC ¶ 359 (husband with terminal cancer); *IAAB* SAC ¶ 15 (elderly wheelchair-bound plaintiff seeking to be reunified with her son). And several Plaintiffs fear that, because of the Proclamation, their loved ones will have no choice but to return to countries where they face grave danger. *See, e.g.*, *IAAB* SAC ¶ 12; *Zakzok* FAC ¶¶ 69, 95.

The organizational Plaintiffs are also injured. For example, *IRAP* Plaintiff Middle East Studies Association ("MESA") will be unable to fulfill its mission of bringing together scholars of Middle Eastern studies, and will therefore also suffer substantial financial losses, because the Proclamation prevents many members and scholars from attending MESA's annual meeting. *IRAP* SAC ¶¶ 296-300. And *IRAP* Plaintiffs Arab-American Association of New York and International

---

[1] *IRAP* Second Am. Compl. ("SAC") ¶¶ 376-77, Dkt. No. 203; *IAAB* Second Am. Compl. ("SAC") ¶¶ 92-99, Dkt. No. 78; *Zakzok* First Am. Compl. ("FAC") ¶¶ 98-102, Dkt. No. 62.

[2] *IRAP* SAC ¶¶ 412-16; *IAAB* SAC ¶¶ 117-21; *Zakzok* FAC ¶¶ 103-14.

[3] *IRAP* SAC ¶¶ 378-90; *IAAB* SAC ¶¶ 104-16.

[4] *IAAB* SAC ¶¶ 100-03 122-25.

Refugee Assistance Project ("IRAP") have both been forced to divert their limited resources to aid clients and others in response to the Proclamation. *Id.* ¶¶ 250-57; 301-09.

2. Plaintiffs allege that the Proclamation is unconstitutional because it was issued based on anti-Muslim animus. The complaints support this allegation with substantial evidence obtained from the public record and without the benefit of discovery. Since his time as a candidate for office, President Trump has unabashedly expressed anti-Muslim views, including proposing a complete ban on Muslims entering the United States. *See IAAB* SAC ¶ 27-35; *Zakzok* FAC ¶¶ 20-22 (recounting then-candidate Trump's numerous anti-Muslim statements). Notably, then-candidate Trump made clear that he viewed a "territory"-based ban as merely a "politically correct" cover for his desired Muslim Ban. In a July 2016 interview, Mr. Trump stated that he was not pulling back from his proposed Muslim Ban: "People were so upset when I used the word 'Muslim.' 'Oh, you can't use the word 'Muslim.' Remember this. And I'm okay with that, because I'm talking territory instead of Muslim." *Id.* ¶ 20(i). Close presidential advisor Rudy Giuliani—who to this day serves as the President's personal attorney—later corroborated that the country-based entry bans were a product of the President's campaign promise to ban Muslims. *See IRAP* SAC ¶¶ 64-65; *IAAB* SAC ¶ 39. The President's virulent anti-Muslim rhetoric has continued unabated since he took office. *IAAB* SAC ¶¶ 87-88.

Since taking office, President Trump has tried on three occasions to deliver on his promised Muslim Ban. First, a week after taking office, he signed Executive Order 13679 ("EO-1"). EO-1 was swiftly challenged and enjoined. *Zakzok* FAC ¶ 29 (citing cases). Next came a second executive order ("EO-2"), bearing the same title as EO-1 and imposing the identical entry ban, but with Iraq removed. *Zakzok* FAC ¶ 30. The President explained that he viewed EO-2 as merely a "watered down, politically correct" version of EO-1, *id.* ¶ 33, and a close advisor Stephen Miller

confirmed that it was designed to achieve the same "basic policy outcome," with "mostly minor technical differences." *Id.* ¶ 34. Like EO-1, EO-2 was also swiftly enjoined. *Id.* ¶ 35 (citing cases). The Proclamation is the Administration's third attempt at the same policy.

3. Plaintiffs allege that the Proclamation imposes restrictions that are not rational national security measures. Indeed, as Plaintiffs allege, the President does not appear to have even considered whether existing law sufficiently addressed the concerns he identified. *IAAB* SAC ¶ 79. The purported purpose of the Proclamation—controlling immigration from countries with deficient information sharing practices—is already addressed by the immigration laws. *Zakzok* FAC ¶ 44. And the Proclamation does not cite any visa vetting failures or otherwise explain how the President concluded that existing vetting procedures were or might be inadequate. *IAAB* SAC ¶ 77; *see also* J. Decl. of Former Nat'l Security Officials, *IRAP* Dkt. No. 211-1 (filed Oct. 11, 2017) (sworn declaration by 49 former national security officials explaining that the ban is "unnecessary" because of existing vetting procedures and will instead "cause serious harm" to national security).

Plaintiffs allege that the Proclamation's reliance on a flawed "worldwide review" is also irrational. Plaintiffs allege that the review was not a rational national security measure because it resulted in a written report that, despite purporting to cover every foreign country's information sharing practices, was a mere 17-pages long—or less than one-tenth of a page for each of the "nearly 200" countries the worldwide review purportedly evaluated. *IAAB* SAC ¶ 69.

Plaintiffs also allege that the Proclamation is not a rational national security measure because it used a "baseline test" that relies on the same criteria used for the Visa Waiver Program. *IAAB* SAC ¶ 71. By relying on the Visa Waiver Program criteria, Defendants ensured that the countries they wanted to exclude—Middle Eastern and North African countries with primarily

Muslim populations—would fail the test. Plaintiffs further allege that use of the Visa Waiver Program criteria cannot be justified on national security grounds because that program serves a much different purpose. The Visa Waiver Program applies to a small group of non-immigrant visas—business travelers and tourists visiting the U.S. for less than 90 days—and is limited to nationals of roughly 38 countries that permit U.S. nationals to travel to their countries without a visa. *Id.* Its criteria are meant to determine which non-citizens should receive an in-person interview or provide a detailed written submission for entry into the United States. The Visa Waiver Program criteria serve no rational purpose when used for the Proclamation's "baseline test," which is intended to determine which noncitizens should be barred indefinitely from entering the country, even *with* an in-person interview and detailed submission. *Id.* ¶ 72.[5]

Plaintiffs allege that the Proclamation's treatment of the "baseline test" results further demonstrates that the Proclamation is not a rational national security measure. Rather than implementing the results of the "baseline test," the Proclamation, at times, ignores its own assessments of national security in favor of other grounds. For example, although Iraq failed the baseline test, the acting Secretary of Homeland Security recommended that the Proclamation not ban Iraqi nationals. Procl. § 1(g). She based her decision not on whether Iraq's failure to meet the "baseline test" posed a "security or safety threat" to the United States and would impair "the United States Government's ability to confirm the identity of [Iraqis] seeking entry into the United States" Procl.

---

[5] For example, the Visa Waiver Program and "baseline test" consider "whether the country impedes the United States Government's receipt of information about passengers and crew traveling to the United States." That factor may make sense under the Visa Waiver Program, when the United States may decide to permit an inbound plane carrying noncitizens to enter the United States without visas. But Plaintiffs allege that it is an utterly irrational factor on which to base a permanent and categorical ban on immigrant and certain non-immigrant visas for citizens of certain countries. *IAAB* SAC ¶ 73.

§ 1(c). Rather, she recommended exempting Iraq as a diplomatic reward for the government's close relationship with the United States and for the United States' presence in Iraq.

Finally, Plaintiffs allege that the Proclamation establishes an irrational waiver mechanism. The waiver criteria are not a rational national security measure because two of the criteria—the undue hardship and national interest factors—are wholly unrelated to national security. *Zakzok* FAC ¶ 46. And Plaintiffs allege that the implementation of the waiver provisions further demonstrates that they are not a rational national security measure. *IAAB* SAC ¶ 81-85; *Zakzok* FAC ¶¶ 51-59. The agencies have established no procedure for affected individuals to apply for waivers and scant guidance exists on when waivers are to be issued. *IAAB* SAC ¶ 82. And in a sworn declaration filed in federal district court, a former consular official stated that the waiver process is a "fraud" and has "no rational basis." *Id.* ¶ 85.

## B.    Preliminary Injunction Proceedings

Shortly after the President announced the Proclamation, Plaintiffs moved for a preliminarily injunction to prevent it from taking effect. On October 17, 2017, this Court granted Plaintiffs' motion and enjoined Defendants from implementing most of the Proclamation's entry bans, subject to certain exceptions. *IRAP v. Trump*, 265 F. Supp. 3d 570, 633 (D. Md. 2017). The Court held that Plaintiffs have standing to assert claims that the Proclamation violates the INA and the Establishment Clause, and that the doctrine of consular nonreviewability does not preclude review because the doctrine "relate[s] only to aliens appealing individual denials of entry into the United States." *Id.* at 603. On the merits, the Court held that Plaintiffs were likely to succeed on their Establishment Clause claim because "the Proclamation [i]s the inextricable re-animation of the twice-enjoined Muslim ban," only this time it is "no longer temporary." *Id.* at 628.

The *en banc* Fourth Circuit affirmed. *See IRAP*, 883 F.3d at 274. The court of appeals held that "individual Plaintiffs and two of the organizational Plaintiffs have standing because they have

sufficiently alleged personal contact with unconstitutional religious animus," *id.* at 257, and that the Supreme Court's decision in *Kleindienst v. Mandel*, 408 U.S. 753, 764-65 (1972), does not prevent the Court from looking behind the face of the Proclamation to determine its constitutionality, *id.* at 266-71. On the merits, the *en banc* court held that the "highly unusual facts" of this case "compelled" a finding that the Proclamation is "not only a likely Establishment Clause violation, but also strikes at the basic notion that the government may not act based on 'religious animosity.'" *IRAP*, 883 F.3d at 269 (quoting *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532, 535 (1993)). The majority did not reach the statutory claims.

In a concurring opinion, Chief Judge Gregory rejected Defendants' arguments that the doctrine of consular nonreviewability bars judicial review and that Plaintiffs lack Article III standing and concluded that Plaintiffs' statutory claims are justiciable. *IRAP*, 883 F.3d at 274 (Gregory, C.J., concurring). Chief Judge Gregory explained that the doctrine of consular nonreviewability was not the "sweeping proposition" suggested by Defendants. *IRAP*, 883 F.3d at 277-78 ("The consular nonreviewability doctrine—applicable only to individualized visa determinations and designed to protect Congress's plenary power in immigration matters—plainly does not bar review here."); *accord id.* at 309 (Keenan, J., concurring); *id.* at 322 (Wynn, J., concurring).

On June 26, 2018, in *Trump v. Hawaii*, the Supreme Court held that the plaintiffs there were unlikely to succeed on the merits of their challenges to the Proclamation. 138 S. Ct. at 2407. The Supreme Court held, however, that the individual plaintiffs had standing to bring their constitutional claims and that neither the consular nonreviewability doctrine nor any other doctrine precluded the Court from reaching the merits of the statutory and constitutional claims. *Id.* at 2407, 2416. On the merits, the Court evaluated whether there was a rational basis for the Proclamation, which required it to weigh the "extrinsic evidence." Ultimately, the Court found that the record

before it contained "persuasive evidence" that the Proclamation was rationally based on national security concerns and that it could "reasonably be understood to result from a justification independent of unconstitutional grounds."[6] *Id.* at 2423. The majority opinion expressly remanded for further proceedings. *Id.*

Four justices dissented. In his dissent, Justice Breyer explained that "there is evidence that supports . . . that the Government is not applying the Proclamation as written." *Hawaii,* 138 S. Ct. at 2431 (Breyer, J., dissenting). Justice Breyer's dissent explained that there are numerous waiver applicants who appear to qualify yet have been denied entry under the Proclamation. *Id.* at 2431-32. Although the Supreme Court's majority opinion dissolved the preliminary injunction, Justice Breyer noted that the Court's decision leaves the district court the ability to explore other issues on remand, including determining whether the Proclamation is a "Muslim ban" and whether the "exemption and waiver" process is genuine. *Id.* at 2433.

Justice Sotomayor explained in her dissenting opinion that the majority opinion "ignor[es] the facts, misconstru[es] our legal precedent, and turn[s] a blind eye to the pain and suffering the Proclamation inflicts upon countless families and individuals." *Hawaii*, 138 S. Ct. at 2433 (Sotomayor, J., dissenting). Justice Sotomayor further explained that the evidence in the record then before the Supreme Court alone sufficed to show that Plaintiffs are likely to succeed on the merits of their Establishment Clause claim. *Id.* at 2434-35 ("The full record paints a far more harrowing picture, from which a reasonable observer would readily conclude that the Proclamation was motivated by hostility and animus toward the Muslim faith.").

---

[6] The Court additionally rejected as a matter of statutory interpretation that the Proclamation violated the nondiscrimination provision of 8 U.S.C. § 1152(a)(1)(A) and exceeded the President's authority under 8 U.S.C. § 1182(f). *See* 138 S. Ct. at 2415. Plaintiffs in these actions are no longer pursing claims based on those statutory provisions.

Following its *Hawaii* ruling, the Supreme Court vacated the Fourth Circuit's judgment and remanded these cases in light of its *Hawaii* decision. *IRAP v. Trump*, No. 17-cv-000361, Dkt. No. 257 (D. Md. filed June 28, 2018). The Fourth Circuit subsequently remanded to this Court for further proceedings. Dkt. No. 259 (filed Oct. 2, 2018).[7] As Defendants note (at 8-9), just four of the thirteen judges of the *en banc* court voted to vacate this Court's October 17, 2017 opinion.

## ARGUMENT

### I.     Plaintiffs Have Standing To Bring Their Claims.

In *Hawaii*, the Supreme Court "conclude[d] that the individual plaintiffs have Article III standing to challenge the exclusion of their relatives under the Establishment Clause."  138 S. Ct. at 2416. The individual plaintiffs had standing, the Supreme Court held, because they alleged a "concrete injury: the alleged real-world effect that the Proclamation has had in keeping them separated from certain relatives who seek to enter the country." *Id.* The Supreme Court's holding is sufficient to establish standing here, because each case has numerous plaintiffs who allege the same concrete injury. *See IAAB* SAC ¶¶ 12-16; *Zakzok* FAC ¶¶ 9, 12; *IRAP* SAC ¶¶ 37-39, 41, 43-45.

Defendants concede that one of the *IAAB* Plaintiffs—John Doe #6—has standing, and that the *IAAB* case can thus proceed. Defs.' Mem. in Supp. of Mot. to Dismiss at 9 n.3 ("Mem."). Defendants do not concede the point for the other two cases, stating instead that they "believe that the *IRAP* and *Zakzok* plaintiffs lack standing." *Id.* But Defendants do not present any argument to

---

[7] Although the Supreme Court vacated this Court and the Fourth Circuit's rulings in light of *Hawaii*, the aspects of those decisions not specifically ruled on by the Supreme Court continue to remain highly persuasive authority. *See U.S. Dep't of Health & Human Servs. v. Fed. Labor Relations Auth.*, 983 F.2d 578, 582 (4th Cir. 1992) (adopting the reasoning of a prior opinion vacated on another ground by the Supreme Court because it was "persuasive"); *Kohrens v. Evatt*, 66 F.3d 1350, 1356-57 (4th Cir. 1995) (finding state court opinion vacated on other grounds to be persuasive).

support their position; it appears that they simply disagree with the Supreme Court's decision. That is no reason for this Court to depart from its prior holding, affirmed by the Fourth Circuit, that Plaintiffs have standing to bring their claims. *See* 883 F.3d at 257-62; 265 F. Supp. 3d at 595-602.

In addition to the Proclamation's "real world effect" of separating families, which alone gives the individual Plaintiffs standing, the dignitary harm it causes Plaintiffs is also sufficient to establish standing. The Supreme Court did not decide whether the *Hawaii* plaintiffs' "dignitary interest," standing alone, "establishe[d] an adequate ground for standing," 138 S. Ct. at 2416. However, such injury is adequate under controlling Fourth Circuit precedent. *See Moss v. Spartanburg Cty. Sch. Dist. Seven*, 683 F.3d 599, 607 (4th Cir. 2012) (Establishment Clause injuries may be "spiritual and value-laden, rather than tangible and economic"). As the Fourth Circuit concluded, Plaintiffs have also established standing based on this injury because "they, as members of the disfavored religion, are the 'victims of this alleged religious intolerance' who are suffering '[f]eelings of marginalization and exclusion.'" *IRAP*, 883 F.3d at 259-60 (quoting *Moss*, 683 F.3d at 606-07).

The organizational Plaintiffs in these cases also have standing, as this Court and the Fourth Circuit held. For the statutory claims, this Court held that the organizational plaintiffs have standing to sue in their own right and on behalf of their members. The Court found that the Proclamation harms "the proprietary and organizational interests" of the organizations, including by impeding Plaintiffs IAAB's and MESA's conferences and events, which rely on attendance by people from the Designated Countries, and interfering with Plaintiff IRAP's operations by preventing a Syrian employee from coming to the United States for training and planning. 265 F. Supp. 3d at 598-99. The Court further held that Plaintiffs MESA and YAMA have associational standing to assert the interests of their members. *Id.*; *see IRAP*, 883 F.3d at 282-83 (Gregory, C.J., concurring) (agreeing

11

with this Court's analysis of organizational plaintiffs' standing to bring statutory claims); *see also Hawaii*, 878 F.3d at 682 (organizational plaintiff had standing to challenge Proclamation based on allegations that "its members will suffer harms such as separation from their families" and the organization itself would "suffer the loss of its members").

The Court also held that Plaintiffs MESA and YAMA have associational standing to bring Establishment Clause claims on behalf of their members. The Court found that each organization has at least one member who had experienced feelings of marginalization as a result of the Proclamation. 265 F. Supp. 3d at 601. Since MESA's mission is to foster understanding of the Middle East and YAMA was founded to oppose EO-1's Muslim Ban, the Court further found that the interests that these organizational plaintiffs seek to vindicate are germane to their organizational missions. *Id.* Finally, the Court concluded that individual members' participation in the lawsuit is not required. *Id.* The Fourth Circuit adopted and affirmed the Court's analysis of MESA and YAMA's associational standing for purposes of the Establishment Clause claim. 883 F.3d at 262.

In short, as Defendants do not seriously contest, Plaintiffs have standing to bring their claims.

## II.    Plaintiffs Have Adequately Alleged That The Proclamation Is Unconstitutional.

Defendants move to dismiss Plaintiffs' claims under Rule 12(b)(6), but they do not actually argue that Plaintiffs fail to state constitutional claims. Even under the rational basis standard, Plaintiffs may state constitutional claims as long as they allege that the purported justification for the Proclamation is irrational. *See Giarratano v. Johnson*, 521 F.3d 298, 304 (4th Cir. 2008). As discussed above, Plaintiffs have alleged in detail that the Proclamation is an irrational measure. *See* pp. 5-7 *supra*. Not only must those allegations be accepted as true on Defendants' motion, but

Plaintiffs are likewise entitled to all inferences that can be reasonably drawn from them.[8] Defendants do not even address Plaintiffs' allegations, much less attempt to argue that they provide an insufficient basis to support constitutional claims.

Nor, in light of the preliminary injunction rulings, could they. This Court, a clear majority of the *en banc* Fourth Circuit, and four justices of the Supreme Court reviewed the preliminary injunction record in this case or in *Hawaii*, and concluded that Plaintiffs were likely to prevail on the merits. *IRAP*, 265 F. Supp. 3d at 628; *IRAP*, 883 F.3d at 274; *Hawaii*, 138 S. Ct. at 2429-31. These opinions refute any suggestion that Plaintiffs' claims do not satisfy the minimal "plausibility" standard necessary to survive a motion to dismiss. *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007) (plaintiff needs to plead "only enough facts to state a claim to relief that is plausible on its face"). The *Hawaii* majority opinion confirms this view: the Court may have held that the *Hawaii* plaintiffs were unlikely to prevail on the merits of the Establishment Clause claim, but it did not suggest, let alone decide, that they had failed to *state* a claim. Rather, that the Court weighed the available evidence and issued a fact-bound decision demonstrates that the Plaintiffs had and have more than adequately alleged a claim on which relief could be granted.

---

[8] For example, given the poor fit between the "baseline test" and the purpose for which Defendants used it; the predictably disparate impact application of that criteria had on Muslims; President Trump's well-documented promises to ban Muslims; and the publicly-available evidence that the Trump Administration routinely exerts pressure on executive agencies to produce outcomes consistent with his policy preferences, it is at least plausible that the criteria the Proclamation used was principally selected *because of* the disparate impact on Muslims it produced, which would plainly violate both the Constitution and the APA.

### A.  The *Hawaii* Ruling Does Not Foreclose Plaintiffs' Claims.

### 1.  The Supreme Court's Ruling, Based On The Preliminary Evidentiary Record, Does Not Bar Plaintiffs From Litigating Their Claims On The Merits.

In *Hawaii*, the Supreme Court held that the plaintiffs had not proven that they were likely to succeed on the merits of their constitutional claim. Defendants contend that this ruling forecloses litigation on the merits of Plaintiffs' claims here. Mem. at 21-25. That is incorrect. Courts decide preliminary injunctions based on the "likelihood" of success on the merits because they are merely attempting to predict how the claims will ultimately be resolved; and that prediction may turn out to be incorrect once discovery is conducted and the record is fully developed. A preliminary injunction ruling is, by definition, *preliminary* and does not bar Plaintiffs from litigating their claims.

Preliminary injunction proceedings are not a substitute for a trial on the merits. Rather, "the purpose of a preliminary injunction is merely to preserve the relative positions of the parties *until a trial on the merits can be held.*" *Benisek v. Lamone*, 138 S. Ct. 1942, 1945 (2018) (emphasis added) (quotation marks and citation omitted). "In general, a court's decisions at the preliminary injunction phase do not constitute law of the case in further proceedings and do not limit or preclude the parties from litigating the merits. . . . [T]his is true for the reason that a preliminary injunction decision is just that: preliminary." *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 948 F. Supp. 2d 538, 551 (D. Md. 2013) (quotation marks and citations omitted). Of particular relevance here, "courts have been loath to apply the [law-of-the-case] doctrine where the prior holdings in the case were based on an undeveloped factual record." *Id.*

Far from foreclosing further proceedings, the Supreme Court's preliminary injunction ruling highlights the need to develop a factual record. The Supreme Court applied rational basis review to decide the constitutionality of the Proclamation. *Hawaii*, 138 S. Ct. at 2420. That standard of review clearly permits consideration of the "factual context" in which the law was enacted.

14

*See, e.g., Romer v. Evans*, 517 U.S. 620, 632 (1996) (law fails rational basis review when it is "divorced from any factual context from which [the Court] could discern a relationship to legitimate state interests"); *United States v. Carolene Prods. Co.*, 304 U.S. 144, 153 (1938) ("Where the existence of a rational basis for legislation whose constitutionality is attacked depends upon facts beyond the sphere of judicial notice, such facts may properly be made the subject of judicial inquiry. . . ." (internal citations omitted)). As the Fifth Circuit has explained, "although rational basis review places no affirmative evidentiary burden on the government, plaintiffs may nonetheless negate a seemingly plausible basis for the law by adducing evidence of irrationality." *St. Joseph Abbey v. Castille*, 712 F.3d 215, 223 (5th Cir. 2013) (affirming district court's findings of fact, made after a bench trial, that a law failed rational basis review); *see also Merrifield v. Lockyer*, 547 F.3d 978, 990-92 (9th Cir. 2008) (holding, based on summary judgment record, that a law failed rational basis review).

The Supreme Court's decision in *Hawaii* confirms that a factfinder must consider the evidentiary record to decide the constitutionality of the Proclamation, including the plaintiffs' "extrinsic evidence" that goes beyond the face of the Proclamation itself. *Hawaii*, 138 S. Ct. at 2420. The Supreme Court considered the evidence to determine whether the Proclamation was rationally based on a purported national security rationale, or whether it could be explained only by anti-Muslim animus. *Id.* The *Hawaii* majority ultimately concluded that the plaintiffs did not carry their burden of proving they were likely to succeed on the merits of their Establishment Clause claims because the record "evidence" supporting the "national security concerns" was "persuasive." *Id.* at 2421. Far from precluding further review, this ruling invites it. For example, the Court was unwilling to infer a lack of "thoroughness of the multi-agency review" based on the evidence that the "final DHS report 'was a mere 17 pages,'" *id.*, but the Court did not suggest that

15

the *Hawaii* plaintiffs (much less parties not before it) should be precluded from seeking discovery to establish a lack of thoroughness through direct evidence.

The two dissenting opinions further highlight that the Court's decision turned on its consideration of the evidence. As Justice Breyer explained, the issue on which "[m]embers of the Court principally disagree[d]" was a factual one: "whether or the extent to which religious animus played a significant role in the Proclamation's promulgation or content." *Id.* at 2429 (Breyer, J., dissenting). Justice Breyer (joined by Justice Kagan) reviewed "[d]eclarations, anecdotal evidence, facts and numbers taken from *amicus* briefs" to conclude that "there is evidence that supports" the view "that the Government is not applying the Proclamation as written," which in turn supports the view that the national security rationale is merely a pretext for discriminating against Muslims. *Id.* at 2431-32. Accordingly, Justice Breyer concluded that he would, "on balance, find the evidence of antireligious bias" provides "a sufficient basis to set the Proclamation aside." *Id.* at 2433.[9]

Justice Sotomayor, joined by Justice Ginsburg, also would have held that the Proclamation fails rational basis review based on "the overwhelming record evidence" supporting the plaintiffs' claims. *Id.* at 2442 (Sotomayor, J., dissenting); *see also id.* at 2445 ("What the unrebutted evidence actually shows is that a reasonable observer would conclude, quite easily, that the primary purpose and function of the Proclamation is to disfavor Islam by banning Muslims from entering our country."). Justice Sotomayor relied on "evidence that at least one of the individuals involved in that process may have exhibited bias against Muslims," and noted that "evidence of which we can take judicial notice indicates that the multiagency review process could not have been very thorough." *Id.* Justice Sotomayor also noted that Defendants offered "no evidence that this current vetting

---

[9] The factual record was so critical to Justices Breyer and Kagan that they would have remanded the case for further factual development before ruling on the preliminary injunction. *Id.* at 2433.

scheme, which involves a highly searching consideration of individuals required to obtain visas for entry into the United States and a highly searching consideration of which countries are eligible for inclusion in the Visa Waiver Program, is inadequate to achieve the Proclamation's proclaimed objectives." *Id.* at 2444.

Defendants do not attempt to argue that the Supreme Court ruled on the preliminary injunction without relying on the evidentiary record. Instead, they argue that Plaintiffs' claims should be dismissed for failure to state a claim because the evidence has not changed since the Supreme Court's ruling. Mem. at 23. But the evidence has not changed because there has not yet been any discovery. In any event, whether Plaintiffs have stated a claim depends on the *allegations* in their complaints, not the evidence in the record. *See supra* pp. 12-13 & n.8. Even if the Court could decide a motion to dismiss based on the evidentiary record, such a ruling would be particularly unwarranted where, as here, stays of discovery have prevented Plaintiffs from developing their evidentiary record. *See IAAB* Dkt. No. 68.

Nor is there any reason to think that permitting discovery would be futile. In numerous recent cases, plaintiffs challenging executive action have been permitted to take discovery and that discovery has revealed evidence undermining the government's position. For example, in *Hamama v. Adducci*, No. 17-cv-11910 (E.D. Mich. 2018), a class of Iraqi nationals sought a preliminary injunction, alleging that their prolonged detention violates *Zadvydas v. Davis*, 533 U.S. 678, 695 (2001). The district court in the Eastern District of Michigan relied on the government's assertions that the United States has a repatriation agreement with Iraq and deferred ruling on an injunction pending discovery. *Hamama v. Adducci*, --- F. Supp. 3d ----, Case No. 17-cv-11910, 2018 WL 6060489,  at *1-2, 4-5, 51 (E.D. Mich. Nov. 20, 2018). But evidence obtained in discovery has shown that there is in fact no repatriation agreement with Iraq, and the district court sanctioned the

government for (*inter alia*) "submitting demonstrably false declarations of Government officials." *Id.* at *1; *see also New York v. U.S. Dep't of Commerce*, No. 18-cv-2921, 2018 WL 5791968, at *6 (S.D.N.Y. Nov. 5, 2018) (documents revealed during litigation gave the court reason to believe that Commerce Secretary had given "false" congressional testimony under oath about the justification for adding citizenship question to census and warranted additional discovery); *Ramos v. Nielsen*, No. 18-cv-1554, 2018 WL 4778285, at *12, 16-20 (N.D. Cal. Oct. 3, 2018) (enjoining termination of Temporary Protected Status for various Latin American countries based in part on evidence of animus from emails and declarations by government officials, including evidence that the Administration pressured agency officials to selectively report on the factual reality in those countries to justify its preferred policy outcome).

In short, the Supreme Court's decision in *Hawaii* makes clear that Plaintiffs are entitled to present evidence demonstrating the irrationality of the Proclamation. Indeed, four justices concluded that the plaintiffs in *Hawaii* had *already* presented sufficient evidence, even before taking any discovery, to show that the Proclamation is unconstitutional. To be sure, a majority of the Supreme Court concluded otherwise, based on the limited evidence in the preliminary injunction record. But nothing about that preliminary ruling precludes Plaintiffs in this case from litigating their claims on the merits.

### 2. The Court Should Look Behind The Face Of The Proclamation To Decide Its Constitutionality, Just As The Supreme Court Did.

Defendants portray the Supreme Court's ruling as upholding the Proclamation under two standards of review: *Mandel* and rational basis review. *See, e.g.*, Mem. at 2, 22. Defendants never explain what they hope to gain from this mischaracterization of the *Hawaii* ruling, but if they are trying to resurrect their prior position that the Proclamation's constitutionality should be decided based solely on the face of the document, this Court should again reject the argument.

The Supreme Court did not apply two different standards of review. Instead, the Court applied *Mandel* by "look[ing] behind the face of the Proclamation to the extent of applying rational basis review." *Hawaii*, 138 S. Ct. at 2420. The Court did not decide whether it could uphold the Proclamation under *Mandel* based solely on the face of the document because Defendants abandoned that argument. *Id.* Contrary to the position they had previously taken, Defendants described "*Mandel* as 'the starting point' of the analysis" and conceded that "it may be appropriate here for the inquiry to extend beyond the facial neutrality of the order." *Id.* Given this concession, the Supreme Court's decision cannot be read as holding that the constitutionality of the Proclamation may—much less must—be determined from the face of the document.

The Court should follow the Supreme Court's lead in considering all of the evidence relevant to Plaintiffs' claims. This Court has already held, based on Justice Kennedy's controlling opinion in *Kerry v. Din*, "that if there is a particularized showing of bad faith, a court should then 'look behind' the action to evaluate its justification." *IRAP*, 265 F. Supp. 3d at 617. This Court held that it could look behind the Proclamation because Plaintiffs "plausibly allege[d] with sufficient particularity an affirmative showing of bad faith in the stated rationale for the Proclamation." *Id.* at 618. The Fourth Circuit applied the same analysis and had "little difficulty" concluding that Plaintiffs had made a particularized showing of bad faith. 883 F.3d at 264. The Supreme Court's decision did not call into question this analysis. Nor could it, given that Defendants conceded that a court could look behind the face of the Proclamation.[10]

_____

[10] Defendants seize on the Supreme Court's statement that "[a] conventional application of *Mandel*, asking only whether the policy is facially legitimate and bona fide, would put an end to our review." *Hawaii*, 138 S. Ct. at 2420. But that dicta simply recognized the Proclamation's "facial neutrality." *Id.* In prior cases applying *Mandel*, the facial neutrality of a policy put an end to the Supreme Court's review because there was no credible evidence that the government had acted in bad faith. Here, a "conventional application" of *Mandel* is insufficient—as Defendants conceded— because of the substantial evidence of bad faith.

**B.      Defendants' Additional Arguments Also Fail.**

Defendants present two "additional reasons" why Plaintiffs' constitutional claims supposedly fail. Mem. at 25-28. Neither has merit.

1.  Defendants' arguments regarding the procedural due process claims largely fail to engage with Plaintiffs' allegations or the relevant legal standard. *See* Mem. at 25-26. It is well settled that a protected liberty interest can arise either "from the Constitution itself, by reason of guarantees implicit in the word 'liberty,'" or "from an expectation or interest" created by "laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citation omitted); *accord Burnette v. Fahey*, 687 F.3d 171, 181 (4th Cir. 2012). Plaintiffs allege that the Proclamation deprives them of each type of protected interest: the interest in familial relationships and family unity, *IRAP* SAC ¶ 387, *IAAB* SAC ¶ 114; and the liberty or property interest created by statutory and regulatory provisions that confer on Plaintiffs the unqualified right to petition for visas on behalf of their relatives,[11] *IRAP* SAC ¶¶ 384-85; *IAAB* SAC ¶ 113. Defendants take issue with only the former interest, and say nothing about the latter, *see* Mem. at 25, which is reason alone to deny dismissal of the procedural due process claims.

Defendants cannot cite any controlling precedent in support of their argument that U.S. citizens have no constitutionally-derived liberty interest in the reunification of their own families, and so they simply urge the Court to follow the plurality in *Kerry v. Din*, 135 S. Ct. 2128, 2135 (2015). Should the Court feel the need to reach this question—which merits far more discussion than the drive-by treatment in Defendants' brief—it should not follow the *Din* plurality, which

---

[11] *See, e.g.*, 8 U.S.C. § 1154(a) (conferring right to petition for immediate relative visas); *id.* § 1154(b) (imposing non-discretionary duty on the Attorney General to approve petitions if the statutory requirements are present); *Ching v. Mayorkas*, 725 F.3d 1149, 1155-56 (9th Cir. 2013) (explaining how this statutory scheme confers an interest protected by due process).

only represented the views of three justices and is unpersuasive on its own terms.[12] The Court should instead follow Justice Breyer's opinion for four justices, which persuasively explains why, under existing Supreme Court precedent, Plaintiffs have a constitutionally-based liberty interest protected by the Due Process Clause. 135 S. Ct. at 2141-43 (Breyer J., dissenting).

Defendants' argument that the Court should dismiss the due process claim of *IAAB* Plaintiff John Doe #6 because the denial of a visa and waiver to his mother-in-law satisfied due process, Mem. at 25-26, likewise fails, for at least two independent reasons. First, Defendants ignore the allegation that Doe #6's mother-in-law was denied a waiver "*before* she even had the opportunity to apply for [it]," *IAAB* SAC ¶ 16 (emphasis added), and nowhere explain how due process can be satisfied in the absence of an opportunity to be heard. Second, Defendants overread the *Din* concurrence. In that case, the denial gave a statutory reference that provided the specific ground for the visa denial. *See* 135 S. Ct. at 2139 ("denial was based on 8 U.S.C. § 1182(a)(3)(B), the statutory provision prohibiting the issuance of visas to persons who engage in terrorist activities"). Here, the statutory citation (to § 212(f) of the INA) does not provide any notice to John Doe #6 of why his mother-in-law was denied a waiver under the Proclamation, *IAAB* SAC ¶ 16, and therefore does not provide due process.

---

[12] The controlling opinion in *Din*, Justice Kennedy's concurrence (which was joined by Justice Alito), "assum[ed]" without deciding that a U.S. citizen has a constitutionally-derived liberty interest in living in this country with her husband. 135 S. Ct. at 2139 (Kennedy, J., concurring in the judgment). Since *Din*, numerous courts have similarly assumed without deciding that such a liberty interest exists. *See Ali v. United States*, 849 F.3d 510, 522 (1st Cir. 2017); *Morfin v. Tillerson*, 851 F.3d 710, 712-13 (7th Cir. 2017); *Abebe v. Perez*, No. 3:14-CV-4415, 2016 WL 454897, at *2 (D.S.C. Feb. 5, 2016); *but see Struniak v. Lynch*, 159 F. Supp. 3d 643, 663 (E.D.V.A. 2016) (holding that a U.S. citizen has "a constitutionally protected and judicially enforceable liberty interest in residing in the United States with his non-citizen spouse," but dismissing the due process claim on other grounds).

2. Defendants argue that Plaintiffs' constitutional claims fail because Plaintiffs have al-leged a violation not of their own constitutional rights but of the rights of their relatives abroad. This Court has already rejected this argument, and it should do so again.

The Court held that Plaintiffs are "asserting a personal injury sustained as a consequence of the alleged constitutional error, not an injury to others," detailing at length the various personal constitutional violations alleged in Plaintiffs' complaints. 265 F. Supp. 3d at 600-01. The Fourth Circuit did the same, holding that Plaintiffs' prolonged separation from their family members and their feelings of religious marginalization and exclusion were sufficient to establish "a violation of [Plaintiffs'] own Establishment Clause rights" that "is particular to them." 883 F.3d at 261. The Supreme Court's decision in *Hawaii* does not call into question the prior rulings of this Court and the Fourth Circuit on this ground, for as Defendants concede, the Supreme Court declined to rule on this issue. Defendants' bald assertion that Plaintiffs' rights have not been violated cannot be squared with Plaintiffs' allegations and this Court's and the Fourth Circuit's assessments of those allegations. As it did before, the Court should reject Defendants' meritless argument.[13]

## III. Plaintiffs May Obtain Review Of The Proclamation Under The APA.

Defendants seek dismissal of Plaintiffs' remaining APA claims on a host of procedural grounds. This Court has already considered and rejected all of those arguments, and Defendants offer no persuasive reason why the Court should depart from its prior ruling.

---

[13] While this Court's and the Fourth Circuit's prior determinations focused on Plaintiffs' Estab-lishment Clause claims, they apply equally to Plaintiffs' Equal Protection claims. Unlike *Allen v. Wright*, 468 U.S. 737 (1984), the case on which Defendants rely, Plaintiffs do not allege an abstract stigmatic injury based merely on awareness of a government practice. *See* 468 U.S. at 754-757. Rather, as required by *Allen*, Plaintiffs have identified "concrete interest[s] with respect to which they are personally subject to discriminatory treatment," *id.* at 757 n.2 —i.e. Plaintiffs' personal interest in being reunited with their close relatives.

### A.     The Proclamation Is Subject To Review Under The APA.

#### 1.     Defendants Provide No Reason For The Court To Depart From Its Prior Ruling On These Issues.

Plaintiffs brought these suits alleging numerous violations of the APA. As relevant to the preliminary injunction proceedings, Plaintiffs asserted APA claims alleging that the Proclamation exceeds the President's authority under the INA based on the APA provision invalidating agency action taken "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," 5 U.S.C. § 706(2)(C). Plaintiffs also assert additional APA claims, which were not part of the preliminary injunction proceedings, alleging that the Proclamation violates the APA in other ways, including that it is arbitrary and capricious. *Id.*

During the preliminary injunction proceedings, Defendants raised numerous arguments why Plaintiffs could not bring APA claims:  (1) the President is not an "agency" under the APA; (2) the challenged action is not "final"; (3) the Proclamation is "committed to agency discretion by law"; and (4) Plaintiffs are not within the "zone of interest" protected by the statute. This Court rejected all of these arguments. *See* 265 F. Supp. 3d at 603-04. So did the Ninth Circuit in *Hawaii*. 878 F.3d at 680-82. And although Defendants presented these arguments to the Supreme Court, Br. for Petitioners at 22-26, *Trump v. Hawaii*, 138 S. Ct. 2392 (2018) (No. 17-965), *available at* 2018 WL 1050350, the Court did not even consider them sufficiently substantial to warrant discussion in its opinion.

Defendants now rehash the same arguments for Plaintiffs' remaining APA claims but do not explain why this Court should reverse its prior ruling. Indeed, they never even mention that the Court has already considered and rejected the arguments.

*First*, Defendants contend that APA review is unavailable because the President is not an "agency" within the meaning of the APA. Mem. at 10. But Plaintiffs' APA claims are not asserted

only against the President; they are asserted against the heads of the Department of Homeland Security, U.S. Customs and Border Protection, U.S. Citizenship and Immigration Services, Department of State, and Department of Justice. *See IAAB* SAC ¶¶ 117-21; *Zakzok* FAC ¶¶ 108-114; *IRAP* SAC ¶¶ 391-96; 412-16. As this Court explained, it "'is now well-established' that '[r]eview of the legality of a Presidential action can ordinarily be obtained in a suit seeking to enjoin the officers who attempt to enforce the President's directive.'" 265 F. Supp. 3d at 603 (quoting *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1327-28 (D.C. Cir. 1996)); *see Hawaii*, 878 F.3d at 680; *IRAP*, 883 F.3d at 284 (Gregory, C.J., concurring) (rejecting Defendants' argument); *see also Franklin v. Massachusetts*, 505 U.S. 788, 800-01 (1992) (Scalia, J., concurring). In all events, an APA cause of action is unnecessary to review presidential action, which the Court can review under its inherent equitable authority. *See Dames & Moore v. Regan*, 453 U.S. 654, 669-88 (1981) (reviewing multiple presidential orders in equity); *see also Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384-85 (2015) (describing "a long history of judicial review of illegal executive action" by "courts of equity").[14]

    *Second*, Defendants contend that the agencies' actions are unreviewable because the implementation of the Proclamation is "committed to agency discretion by law." Mem. at 11. This Court already rejected that argument because "courts have had no difficulty reaching the merits of challenges to the President's use of § 1182(f)." 265 F. Supp. 3d at 604 (citing, *inter alia*, *Sale v.*

---

[14] Defendants continue to invoke *Ancient Coin Collectors Guild v. U.S. Customs and Border Protection*, 801 F. Supp. 2d 383, 402 (D. Md. 2011), to argue that agencies "carrying out the Proclamation based on a delegation of authority from the President" also fall within the bar to APA review of Presidential actions. Mem. at 10. But that argument is no more persuasive this time around. That case remains distinguishable because it involved a delegation of the President's sole authority to negotiate import restrictions on cultural property with foreign governments. Here, the agencies charged with implementing the Proclamation have independent responsibilities with respect to immigration administration and enforcement under the INA.

*Haitian Ctrs. Council*, 509 U.S. 155, 187 (1993) (reviewing on the merits an INA challenge to the President's use of § 1182(f)); *IRAP*, 883 F.3d at 286-87 (Gregory, C.J., concurring). The Supreme Court's decision in *Hawaii* confirms this point by holding that the Proclamation "comports with the . . . textual limits of § 1182(f)." 138 S. Ct. at 2410.[15]

Moreover, judicial review under the APA would not be precluded even if the implementation of the Proclamation were entirely discretionary. The Fourth Circuit has held that "[e]ven where an agency's action is committed to the agency's discretion, a court should hear a claim that an agency rested an action on 'considerations that Congress could not have intended to make relevant.'" *Electricities of N.C., Inc. v. Se. Power Admin.*, 774 F.2d 1262, 1267 (4th Cir. 1985). Accordingly, another court in this district recently held that APA review would be available, even if an agency's decision were discretionary, based on allegations that the agency's proffered reason was pretextual and that the decision was in fact "a partisan act aimed at advancing the Trump Administration's anti-immigration political agenda." *Kravitz v. U.S. Dep't of Commerce*, --- F. Supp. 3d ---, 2018 WL 4005229, at *16 (D. Md. Aug. 22, 2018). Plaintiffs make similar allegations here—the Proclamation was adopted based on anti-Muslim animus and the purported national security concerns are a pretext lacking any rational basis.

*Third*, Defendants contend that APA review is unavailable because there is no "final agency action." Mem. at 11-12. That argument too has been dismissed by this Court. *See* 265 F. Supp. 3d at 604 ("As for Defendants' claim that the agency action to date is not 'final,' the Proclamation is already in effect as to certain individuals and is being enforced by federal agencies."); *see also Hawaii*, 878 F.3d at 604. As described by Chief Judge Gregory of the Fourth Circuit,

---

[15] The Supreme Court's ruling that the Proclamation falls within the scope of the authority delegated to the President does not resolve the question whether the agencies have implemented that authority in a manner that violates the procedural or substantive requirements of the APA.

"Plaintiffs merely ask that their relatives go through the same individualized vetting process that the Executive Branch applies to nationals from all other countries—an individualized vetting process that has already been denied them because of the agencies' final decision to implement the Proclamation's travel restrictions." *IRAP*, 883 F.3d at 285-86 (Gregory, C.J., concurring).

*Fourth*, Defendants contend that APA review is unavailable because Plaintiffs are not "adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702; *see* Mem. at 12. But as Judge Keenan said, "the individual plaintiffs' interests *easily* fall within the INA's protected zone of interests," which include the "preservation of the family unit," because Plaintiffs "assert that they will be separated from family members if the Proclamation is permitted to take effect." *IRAP*, 883 F.3d at 308 (Keenan, J., concurring) (emphasis added) (quoting *Legal Assistance for Vietnamese Asylum Seekers v. Dep't of State, Bureau of Consular Affairs*, 45 F.3d 469, 471-72 (D.C. Cir. 1995)).[16]

In short, this Court, the Ninth Circuit, and the Supreme Court all reached the merits of statutory claims when they ruled on whether the Proclamation exceeds the President's authority under the INA. In so doing, the courts rejected Defendants' arguments against reviewability of statutory claims regarding the lawfulness of the Proclamation. Those arguments similarly provide no basis for the Court to dismiss Plaintiffs' remaining APA claims.

---

[16] The Supreme Court's decision in *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012), provides strong support for this Court's ruling. As Chief Judge Gregory explained, "Consistent with 'Congress's evident intent when enacting the APA to make agency action presumptively reviewable,' the Supreme Court has held that this standard 'is not meant to be especially demanding.'" *IRAP*, 883 F.3d at 286 (Gregory, C.J., concurring) (quoting *Patchak*, 567 U.S. at 225). "Indeed, the APA forecloses suit only when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Id.* (quotation marks and citation omitted).

## 2.     The Court May Not Dismiss Plaintiffs' APA Claims For Lack Of Merit.

Defendants contend that the Court should dismiss Plaintiffs' APA claims because they fail on the merits. Mem. at 13. But a motion to dismiss is not a proper vehicle for ruling on the merits of an APA claim. Litigating the merits of an APA claim typically involves the agency producing an administrative record and the parties filing cross-motions for summary judgment based on that record. *See Am. Bioscience, Inc. v. Thompson,* 269 F.3d 1077, 1083-84 (D.C. Cir. 2001); *see also Styrene Info. & Research Ctr., Inc. v. Sebeliu*s, 944 F. Supp. 2d 71, 77-78 (D.D.C. 2013) ("Summary judgment is the proper mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record and consistent with the APA standard of review." (quotation marks omitted)). Defendants offer no persuasive reason for departing from that standard practice here.

a. Defendants contend that the Supreme Court's holding that the *Hawaii* plaintiffs failed to carry their burden of proving the Proclamation is unconstitutional forecloses any argument that the Proclamation is arbitrary and capricious under the APA. Mem. at 13. That argument is flawed in numerous respects. Even putting aside the preliminary nature of the Supreme Court's ruling, *see* Part II.A.1, and the vastly different procedural postures, the argument fails because it ignores the different evidentiary records applicable to the claims. The Supreme Court reviewed the limited evidence in the preliminary injunction record, but Plaintiffs' APA claims must be adjudicated based on the full administrative record, which has yet to be produced. *See Andreas-Myers v. Nat'l Aeronautics & Space Admin.*, No. GJH-16-3410, 2017 WL 1632410, at *5 (D. Md. Apr. 28, 2017) (noting that under the APA, "the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." (quotation marks omitted)).

27

Defendants are also incorrect to suggest that the Supreme Court's characterization of the Proclamation establishes that it is not arbitrary and capricious. Mem. at 13. The Court's passing reference to the "thorough[ness]" of the Proclamation was not a determination that the restrictions imposed by the Proclamation are adequately supported by administrative record. The Supreme Court could not make such a determination because it did not review the agency reports, much less the entire administrative record. Indeed, Defendants have refused even to say whether there is anything in the Proclamation that is inconsistent with the information in the underlying reports. *See IRAP v. Trump*, Hr'g Tr. 50-52 (D. Md. Oct. 17, 2017). An arbitrary-and-capricious determination requires consideration of such factors.

b. Defendants also contend that the Proclamation should not be subject to any notice-and-comment rulemaking requirements. Mem. at 13-14. Plaintiffs do not contend that the President needed to engage in notice-and-comment rulemaking, but rather that the agencies implementing the Proclamation must do so. For example, the Proclamation requires the Departments of State and Homeland Security to issue "guidance" that sets the eligibility criteria for the Proclamation's waiver provisions. Procl. § 1(c). Such rules and how they are implemented are more than mere "guidance." Rather, they create new law and impose new rights and duties, and thus are substantive rules requiring notice-and-comment rulemaking. *See Jerri's Ceramic Arts, Inc. v. Consumer Prod. Safety Comm'n*, 874 F.2d 205, 207 (4th Cir. 1989); *see* 5 U.S.C. § 553.

Defendants do not deny that the agencies must issue substantive rules to implement the Proclamation. Instead, they assert that notice-and-comment rulemaking is unnecessary because the Proclamation falls under an exemption for regulations involving "a . . . foreign affairs function of the United States." 5 U.S.C. § 553(a)(1). But that exception is not nearly as broad as Defendants suggest. Rather, "[f]or the exception to apply, the public rulemaking provisions should provoke

definitely undesirable international consequences." *City of New York v. Permanent Mission of India to United Nations*, 618 F.3d 172, 202 (2d Cir. 2010). This narrow construction is necessary because "it would be problematic if incidental foreign affairs effects eliminated public participation in this entire area of administrative law." *Id.*[17] Thus, as the Ninth Circuit has explained, although immigration matters can implicate foreign affairs, the "foreign affairs exception would become distended" if it applied to immigration actions generally. *Yassini v. Crosland*, 618 F.2d 1356, 1360 (9th Cir. 1980).

Applying these principles, courts regularly require agencies to engage in notice-and-comment rulemaking when implementing policy changes with substantive consequences for immigrants. *See, e.g., Doe v. Trump*, 288 F. Supp. 3d 1045, 1077 (W.D. Wash. 2017), *reconsideration denied*, 284 F. Supp. 3d 1182 (W.D. Wash. 2018) (plaintiffs were likely to succeed on the merits of their APA claim that a travel ban-related memo directing a continuing risk assessment of refugees from particular countries—nearly all of which are Muslim-majority—required notice-and-comment rulemaking); *Texas v. United States*, 809 F.3d 134, 171-78 (5th Cir. 2015), *aff'd by an equally divided court*, 136 S. Ct. 2271 (2016) (plaintiffs were likely to succeed on the merits of their APA claim that notice-and-comment rulemaking was required for immigration policy granting deferred action to certain undocumented immigrants); *Zhang v. Slattery*, 55 F.3d 732, 744-47 (2d Cir. 1995) *superseded by statute on other grounds*, 8 U.S.C. § 1101(a)(42) (notice-and-comment rulemaking required for agency's interim rule recognizing fear of coercive family practices as basis for refugee status). Defendants cannot show—and have not event attempted to show—

---

[17] "This approach accords with Congress's admonition in the legislative history of the APA not to interpret the phrase 'foreign affairs function' . . . loosely . . . to mean any function extending beyond the borders of the United States.'" *Permanent Mission of India to United Nations*, 618 F.3d at 202 (quoting S. Rep. No. 79-752, at 13 (1945); see also H.R. Rep. No. 79-1980, at 23 (1946)).

that the rules governing the waiver implementation so clearly implicate "undesirable international consequences," *Yassini*, 618 F.2d at 1360, that Plaintiffs' APA claims must be dismissed as a matter of law for failure to state a claim.

### B.     The Doctrine of Consular Nonreviewability Remains Inapplicable.

This Court and others have repeatedly rejected Defendants' argument that the doctrine of consular nonreviewability precludes review of statutory challenges to the Proclamation and the earlier Executive Orders.[18] The Supreme Court noted that the doctrine imposes no jurisdictional limitation on courts' authority to review executive action, and thus addressed the *Hawaii* plaintiffs' statutory claims without applying the doctrine. *See Hawaii*, 138 S. Ct. at 2407. Defendants attempt to avoid these decisions by rebranding the doctrine from "consular nonreviewability" to "funda-mental principles of nonreviewability." Mem. at 17-20; *but see* Mem. at 20 n.8 (discussing "the doctrine of consular nonreviewability"). But the term is not important. The important point is that no doctrine precludes this Court's review of Plaintiffs' APA claims. The Court should reject De-fendants' attempt to expand the doctrine by renaming it and instead should adhere to its prior ruling.

The consular nonreviewability doctrine "provides that, absent congressional authorization, courts lack jurisdiction to review a consular officer's decision to grant or deny a visa." *IRAP*, 883 F.3d at 277 (Gregory, C.J., concurring) (citing *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999)); *see also Hawaii*, 878 F.3d at 679. As this Court has recognized, however, "Plain-tiffs . . . challenge not individual visa decisions by consular officers, but the overarching travel ban policy imposed by the Proclamation." 265 F. Supp. 3d at 602. Nevertheless, Defendants contend

---

[18] *See IRAP*, 265 F. Supp. 3d 602-03(Proclamation); *see also Hawai'i*, 878 F.3d at 679-80 (Proc-lamation); *IRAP*, 883 F.3d at 277-79 (Gregory, C.J., concurring) (Proclamation); *IRAP*, 857 F.3d at 587 (EO-2); *Hawai'i*, 859 F.3d at 769 (EO-2); *Washington*, 847 F.3d at 1162 (EO-1).

that the consular nonreviewability doctrine still applies to bar Plaintiffs' challenge to "the President's broad policy judgments." Mem. at 18. That reasoning cannot be squared with the Court's prior holding: "Where Plaintiffs include U.S. citizens asserting statutory and constitutional claims challenging *a broader policy as opposed to individual consular determinations*, the doctrine of consular nonreviewability is not applicable." 265 F. Supp. 3d at 603 (emphasis added); *see also IRAP*, 883 F.3d at 278 (Gregory, C.J., concurring) (consular nonreviewability "does not apply when determining whether the Executive Branch has complied with the Legislative Branch's commands.").

Nothing in the Supreme Court's decision in *Hawaii* casts any shadow on this Court's prior ruling or the consistent determinations of other courts that have considered similar challenges. The *Hawaii* Court declined to resolve Defendants' consular nonreviewability argument because it concluded the issue was not jurisdictional and that plaintiffs' claims could be resolved on other grounds. *See Hawaii*, 138 S. Ct. at 2407. Indeed, as the Supreme Court observed, in a prior case, *Sale v. Haitian Centers Council, Inc.*, the Court had considered the merits of a statutory claim similar to the one that Plaintiffs here raise notwithstanding the government's assertion of consular nonreviewability. 509 U.S. 155 (1993); *see also U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544-47 (1950) (adjudicating merits of statutory claims against a Presidential proclamation).[19]

---

[19] Defendants also object to some of the proposed relief that Plaintiffs seek as too intrusive. Mem. at 20. Plaintiffs expect that the evidence will show that such relief is warranted, but in any event, Defendants' objection is premature. The Court need not determine what relief is appropriate unless (and until) the Proclamation is invalidated. Defendants offer no basis for dismissing Plaintiffs' claims on the ground that a portion of the relief sought is unwarranted.

## CONCLUSION

Based on the foregoing, Defendants' motion to dismiss should be denied. Plaintiffs respectfully request that the Court set a deadline for the parties to submit a discovery plan, as required by Federal Rule of Civil Procedure 26(f).

Dated: December 3, 2018

Respectfully submitted,

____/s/_Marianne Kies_____

<table>
<tr><td>

Johnathan J. Smith*
Sirine Shebaya (Bar # 07191)
MUSLIM ADVOCATES
P.O. Box 66408
Washington, D.C. 20035
Tel: (202) 897-2622
Fax: (415) 765-1774
johnathan@muslimadvocates.org
sirine@muslimadvocates.org

Richard B. Katskee (Bar # 27636)
AMERICANS UNITED FOR SEPARATION
OF CHURCH AND STATE
1310 L St. NW, Ste. 200
Washington, D.C. 20005
Tel: (202) 466-3234
Fax: (202) 466-3353
katskee@au.org

</td><td>

Mark H. Lynch (Bar # 12560)
Mark W. Mosier*
Marianne F. Kies (Bar # 18606)
COVINGTON & BURLING LLP
One City Center
850 10th Street, NW
Washington, D.C. 20001
Tel: (202) 662-6000
Fax: (202) 662-6302
mlynch@cov.com
mmosier@cov.com
mkies@cov.com

Kathryn E. Cahoy*
COVINGTON & BURLING LLP
333 Twin Dolphin Dr., Suite 700
Redwood Shores, CA 94065
Tel: (650) 632-4735
Fax: (650) 632-4800
kcahoy@cov.com

 * Admitted *pro hac vice*

*Counsel for IAAB Plaintiffs*

</td></tr>
</table>

_____/s/_____

Faiza Patel*
Brennan Center for Justice
at NYU School of Law
120 Broadway, Suite 1750
New York, NY 10271
Tel.: (646) 292-8335
Fax: (212) 463-7308
faiza.patel@nyu.edu
michael.price@nyu.com

Jethro Eisenstein*
Profeta & Eisenstein
45 Broadway, Suite 2200
New York, New York 10006
Tel.: (212) 577-6500
Fax: (212) 577-6702
jethro19@gmail.com

Lena F. Masri
Gadeir Abbas†
Council on American-Islamic
Relations (CAIR)
453 New Jersey Avenue SE
Washington, D.C. 20003
Tel.: (202) 488-8787
Fax: (202) 488-0833
lmasri@cair.com
gabbas@cair.com

Charles E. Davidow (Bar # 06516)
Paul, Weiss, Rifkind, Wharton &
Garrison LLP
2001 K Street NW
Washington, DC 20006-1047
Tel.: (202) 223-7300
Fax: (202) 223-7420
cdavidow@paulweiss.com

Robert A. Atkins*
Liza Velazquez *
Andrew J. Ehrlich*
Steven C. Herzog*
Paul, Weiss, Rifkind, Wharton &
Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Tel.: (212) 373-3000
Fax: (212) 757-3990
ratkins@paulweiss.com
lvelazquez@paulweiss.com
aehrlich@paulweiss.com
sherzog@paulweiss.com

* Admitted _pro hac vice_

_Counsel for Zakzok Plaintiffs_

† _Licensed in VA; not in DC_
_Practice limited to federal matters_

              /s/

Omar C. Jadwat*
Lee Gelernt*
Hina Shamsi*
Hugh Handeyside*
David Hausman*
American Civil Liberties Union
Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2600
Fax: (212) 549-2654
ojadwat@aclu.org
lgelernt@aclu.org
hshamsi@aclu.org
hhandeyside@aclu.org
dhausman@aclu.org

Cecillia D. Wang*
Cody H. Wofsy*
Spencer E. Amdur*
American Civil Liberties Union
Foundation
39 Drumm Street
San Francisco, CA 94111
Tel: (415) 343-0770
Fax: (415) 395-0950
cwang@aclu.org
cwofsy@aclu.org
samdur@aclu.org

David Cole*
Daniel Mach*
Heather L. Weaver*
American Civil Liberties Union
Foundation
915 15th Street NW
Washington, DC 20005
Tel: (202) 675-2330
Fax: (202) 457-0805
dcole@aclu.org
dmach@aclu.org
hweaver@aclu.org

David Rocah (Bar No. 27315)
Deborah A. Jeon (Bar No. 06905)

Esther Sung*
Nicholas Espíritu*
Melissa S. Keaney*
National Immigration Law Center
3450 Wilshire Boulevard, # 108-62
Los Angeles, CA 90010
Tel: (213) 639-3900
Fax: (213) 639-3911

sung@nilc.org
espiritu@nilc.org
keaney@nilc.org

Justin B. Cox (Bar No. 17550)
International Refugee Assistance Project
PO Box 170208
Atlanta, GA 30317
Tel: (678) 404-9119
Fax: (212) 533-4598
jcox@refugeerights.org

Mariko Hirose*
Linda Evarts*
Kathryn Claire Meyer*
International Refugee Assistance Project
40 Rector Street, 9th Floor
New York, New York 10006
Tel: (646) 459-3044
Fax: (212) 533-4598
mhirose@refugeerights.org
levarts@refugeerights.org
kmeyer@refugeerights.org

Sonia Kumar (Bar No. 07196)
Nicholas Taichi Steiner (Bar No. 19670)
American Civil Liberties Union Foundation of Maryland
3600 Clipper Mill Road, Suite 350
Baltimore, MD  21211
Tel: (410) 889-8555
Fax: (410) 366-7838
jeon@aclu-md.org
rocah@aclu-md.org
kumar@aclu-md.org
steiner@aclu-md.org

\* Admitted *pro hac vice*

*Counsel for IRAP Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on this 3rd day of December, 2018, I caused a copy of the foregoing document

to be sent to all parties receiving CM/ECF notices in this case.

_____
Marianne F. Kies (Bar # 18606)