# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
## SOUTHERN DIVISION

| | |
|---|---|
| INTERNATIONAL REFUGEE ASSISTANCE PROJECT, *et al*., | |
| Plaintiffs, | |
| v. | Civil Action No.: 17-CV-0361 |
| DONALD J. TRUMP, in his official capacity as President of the United States, *et al*., | Judge Chuang |
| Defendants. | |
| IRANIAN ALLIANCES ACROSS BORDERS, *et al*., | |
| Plaintiffs, | |
| v. | Civil Action No.: 17-CV-2921 |
| DONALD J. TRUMP, in his official capacity as President of the United States, *et al*., | Judge Chuang |
| Defendants. | |
| EBLAL ZAKZOK, *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No.: 17-CV-2969 |
| DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, | Judge Chuang |
| Defendants. | |

# PLAINTIFFS' COMBINED MEMORANDUM IN OPPOSITION TO THE GOVERNMENT'S MOTION FOR CERTIFICATION AND FOR A STAY OF DISCOVERY

# TABLE OF CONTENTS

Table of Authorities ................................................................................................................ ii

PRELIMINARY STATEMENT ............................................................................................ 1

BACKGROUND AND PROCEDURAL HISTORY .............................................................. 2

    A.    The Court's Preliminary Injunction Order ............................................................ 2

    B.    The Previous Stay ................................................................................................. 3

    C.    This Court Denies the Government's Motion to Dismiss Plaintiffs'
          Constitutional Claims ........................................................................................... 4

ARGUMENT ........................................................................................................................ 5

I.    The Order Denying in Part the Government's Motion to Dismiss Does Not
    Warrant Interlocutory Appeal .............................................................................. 5

    A.    Any Ground for Difference of Opinion Is Not Substantial................................... 7

    B.    An Immediate Appeal Would Not Materially Advance the Ultimate
          Termination of This Litigation............................................................................ 11

    C.    Nothing Else About This Case Warrants Certification Either ............................ 13

II.    In Any Event, Discovery Should Not Be Stayed ............................................... 13

    A.    A Stay Would Cause Substantial Harm to Plaintiffs .......................................... 14

    B.    Proceeding to Discovery Would Not Result in Hardship to the
          Government.......................................................................................................... 16

    C.    The Requested Stay Would Not Promote Judicial Economy ............................. 18

CONCLUSION.................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*United States ex rel. A1 Procurement, LLC* v. *Thermcor, Inc.*,
173 F. Supp. 3d 320 (E.D. Va. 2016) ..............................................................................8, 10

*Alharbi* v. *Miller*,
368 F. Supp. 3d 527 (E.D.N.Y. 2019) ...................................................................................8

*Benisek* v. *Lamone*,
138 S. Ct. 1942 (2018) ..............................................................................................8, 10, 12

*Blumenthal* v. *Trump*,
No. 17-cv-1154, 2019 WL 2603864 (D.D.C. June 25, 2019)................................7, 10, 12, 13

*Butler* v. *DirectSAT USA LLC*,
307 F.R.D. 445 (D. Md. 2015)..........................................................................................6, 11

*Castaneda* v. *Molinar*,
No. 07-cv-7241, 2008 WL 9449576 (C.D. Cal. May 20, 2008).............................................17

*Clinton* v. *Jones*,
520 U.S. 681 (1997)...........................................................................................................14

*Coalition for Equity & Excellence in Md. Higher Educ.* v. *Md. Higher Educ. Comm'n*,
No. 06-cv-2773, 2015 WL 4040425 (D. Md. June 29, 2015)................................................18

*Dist. of Columbia* v. *Trump*,
344 F. Supp. 3d 828 (D. Md. 2018) ............................................................................ passim

*E & I Holdings, LLC* v. *Bellmari Trading USA, Inc.*,
No. 2:18-cv-00484, 2018 WL 5624269 (S.D. W. Va. Oct. 30, 2018)....................................17

*Eshelman* v. *Puma Biotechnology, Inc.*,
No. 7:16-cv-18, 2017 WL 9440363 (E.D.N.C. May 24, 2017) ..................................14, 17, 19

*Estate of Giron Alvarez* v. *Johns Hopkins Univ.*,
No. 15-cv-950, 2019 WL 1779339 (D. Md. Apr. 23, 2019) (Chuang, J.) ...................... passim

*Fannin* v. *CSX Trans., Inc.*,
873 F.2d 1438, 1989 WL 42583 (4th Cir. 1989) (unpublished).........................................5, 11

*Fed. Ins. Co.* v. *S. Lithoplate, Inc.*,
No. 5:12-cv-793, 2013 WL 4045924 (E.D.N.C. Aug. 8, 2013) ............................................19

*Firestone Tire & Rubber Co.* v. *Risjord*,
   449 U.S. 368 (1981)...............................................................................5

*Garber* v. *Office of the Comm'r of Baseball*,
   120 F. Supp. 3d 334 (S.D.N.Y. 2014).....................................................6

*Giarratano* v. *Johnson*,
   521 F.3d 298 (4th Cir. 2008) ..................................................................10

*Goodman* v. *Archbishop Curley High Sch., Inc.*,
   195 F. Supp. 3d 767 (D. Md. 2016) .........................................................9

*Impulse Monitoring, Inc.* v. *Aetna Health, Inc.*,
   No. 3:14-cv-02041, 2014 WL 4748598 (D.S.C. Sept. 23, 2014) ...........17

*IRAP* v. *Trump*,
   883 F.3d 233 (4th Cir. 2018) (en banc) ..................................................10

*IRAP* v. *Trump*,
   138 S. Ct. 2710 (2018)..............................................................................3

*IRAP* v. *Trump*,
   323 F. Supp. 3d 726 (D. Md. 2018) ........................................................14

*IRAP* v. *Trump*,
   905 F.3d 287 (4th Cir. 2018) ....................................................................3

*James* v. *Jacobson*,
   6 F.3d 233 (4th Cir. 1993) ........................................................................5

*Lockyer* v. *Mirant Corp.*,
   398 F.3d 1098 (9th Cir. 2005) .................................................................16

*Metro. Reg'l Info. Sys., Inc.* v. *Am. Home Realty Network, Inc.*,
   948 F. Supp. 2d 538 (D. Md. 2013) ..........................................................8

*United States ex rel. Michaels* v. *Agape Senior Cmty., Inc.*,
   848 F.3d 330 (4th Cir. 2017) ....................................................................6

*Mohawk Indus., Inc.* v. *Carpenter*,
   558 U.S. 100 (2009)...................................................................................5

*Mullins* v. *Suburban Hosp. Healthcare Sys., Inc.*,
   No. 16-cv-1113, 2017 WL 3023282 (D. Md. July 17, 2017) ................14

*Nero* v. *Mosby*,
   No. 16-cv-1304, 2017 WL 1048259 (D. Md. Mar. 20, 2017) ..........14, 19

*In re Nichols*,
  No. 14-cv-625, 2014 WL 4094340 (D. Md. Aug. 15, 2014) .....................................................9

*Trump* v. *Hawaii*,
  138 S. Ct. 923 (2018) .............................................................................................................3

*Trump* v. *IRAP*,
  138 S. Ct. 542 (2017) .............................................................................................................3

*In re United States*,
  138 S. Ct. 443 (2017) .............................................................................................................9

*Maryland* v. *Universal Elections, Inc.*,
  729 F.3d 370 (4th Cir. 2013) ...............................................................................................13

*Williford* v. *Armstrong World Indus., Inc.*,
  715 F.2d 124 (4th Cir. 1983) ...............................................................................................14

**STATUTES**

28 U.S.C. § 1292(b) ......................................................................................................... passim

**OTHER AUTHORITIES**

Kaelyn Forde, *2-Year-Old Boy Whose Yemeni Mother Fought Trump's Travel
  Ban To Be With Him Has Died*, ABC NEWS (Dec. 29, 2018, 6:16 PM),
  https://abcn.ws/2s2cvzs ........................................................................................................16

Michael Daly, *She Escaped the Hell of Yemen, but Her 9-Year-Old Son is
  Stranded*, THE DAILY BEAST (Nov. 27, 2019, 10:42 AM),
  https://bit.ly/2LwrWLd ........................................................................................................16

Mallory Moench, *U.S. Citizen's Family Was Denied Visa under Trump's Travel
  Ban.  Then He Died by Suicide*, NBC NEWS (July 28, 2018, 5:12 AM),
  https://nbcnews.to/2mRckEM ..............................................................................................16

## PRELIMINARY STATEMENT

With the benefit of the Supreme Court's ruling in *Trump* v. *Hawaii*, this Court denied the Government's motion to dismiss the above-captioned cases in a thorough, well-reasoned order dated May 2, 2019.  The Government now attempts to avoid its obligation to litigate and to engage in discovery—a burden borne by *all* civil litigants—by seeking certification of that order for interlocutory appeal.   In yet another attempt to prevent Plaintiffs from challenging the Proclamation, the Government also seeks a complete stay of those cases during the pendency of its proposed appeal.  The Court should deny the Government's requests and order the parties to proceed with discovery on an expedited basis.  Indeed, that is precisely what the Court has already stated would be appropriate in this situation.

Interlocutory appeal is warranted only in extraordinary circumstances.  The Government has satisfied *none* of the requirements for certification.  Instead, it has simply repeated the same arguments that it advanced—and that this Court rightly rejected—in support of its motion to dismiss.  A party's mere disagreement with a district court's ruling does not warrant certification of an interlocutory appeal.  The Court should therefore deny certification.

Even if the Court were to grant certification, it should deny the Government's request to stay these proceedings.  The Court has already considered the relevant factors in connection with its order staying these cases while awaiting the Supreme Court's ruling in *Trump* v. *Hawaii*.  In that order, the Court found both that the Government will not suffer any cognizable hardship in the absence of a stay and that Plaintiffs suffer significant harm each and every day that these cases are stayed.  And although the Court stayed proceedings then in the interest of judicial economy, that order was explicitly premised on a finding that the Supreme Court's imminent ruling would necessarily require re-litigation of the Government's motion to dismiss, which was the "next step" in these cases at that time.  The Court therefore concluded that the "appropriate way to address the

ongoing harm to Plaintiffs would be to proceed with the cases on an expedited basis following the Supreme Court's decision."  (Memorandum Opinion (the "Stay Opinion" or "Stay Op.") at 15 (*IRAP* ECF No. 255; *IAAB* ECF No. 68; *Zakzok* ECF No. 58).)  That remains the proper path forward.

The Court should therefore deny both the Government's request for certification and its request to stay discovery and enter an order directing the parties to conduct discovery on an expedited basis.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs challenge the validity and enforceability of Presidential Proclamation 9645,[1] the President's third attempt to fulfill his many promises to ban Muslims from the United States.  (*See generally IRAP* ECF No. 219; *IAAB* ECF No. 46; *Zakzok* ECF No. 36.)  As of the filing of this memorandum, versions of the President's discriminatory policy toward Muslims have been in effect for more than two years.

### A.      The Court's Preliminary Injunction Order

The individual Plaintiffs in these cases are U.S. citizens and lawful permanent residents whose relatives—including spouses, parents, and children—are unable to obtain visas while the Proclamation is in effect.  (*See generally IRAP* ECF No. 219; *IAAB* ECF No. 46; *Zakzok* ECF No. 36, at 21-35.)  The Proclamation has prevented the individual Plaintiffs from reuniting with their family members and loved ones and has caused them to feel "personally attacked, targeted, and disparaged."  (*IAAB* ECF No. 26-8.)  The organizational Plaintiffs are social services organizations and associations of young people, with similarly situated members and clients, that host events

---

[1] Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry into the United States by Terrorists or Other Public-Safety Threats, 82 Fed. Reg. 45161 (Sept. 27, 2017).

and provide services that the Proclamation has disrupted.  (*See IRAP* ECF No. 219; *IAAB* ECF No. 46; *Zakzok* ECF No. 36.)

Plaintiffs allege numerous causes of action and sought a preliminary injunction of the Proclamation based on some of those claims.  (*See IRAP* ECF No. 205; *IAAB* ECF No. 26; *Zakzok* ECF No. 2.)  In an order dated October 17, 2017, this Court agreed that the Proclamation likely violates both the Establishment Clause and the Immigration and Nationality Act's anti-discrimination provision, 8 U.S.C. § 1152(a), and therefore issued a preliminary injunction prohibiting the Government from enforcing most provisions of Section 2 of the Proclamation.  (*See IRAP* ECF No. 220; *IAAB* ECF No. 47; *Zakzok* ECF No. 37.)

On December 4, 2017, the Supreme Court stayed both injunctions.  *Trump* v. *IRAP*, 138 S. Ct. 542 (2017).  The Supreme Court ultimately granted certiorari in *Trump* v. *Hawaii*, 138 S. Ct. 923 (2018), and reversed the preliminary injunction. The Supreme Court also granted the cert. petitions in these cases, vacating and remanding the Fourth Circuit's en banc decision affirming this Court's order granting the preliminary injunction.  *IRAP* v. *Trump*, 138 S. Ct. 2710 (2018). The Fourth Circuit then remanded these cases to this Court.  *IRAP* v. *Trump*, 905 F.3d 287 (4th Cir. 2018).

### B.     The Previous Stay

While *Trump* v. *Hawaii* was pending before the Supreme Court, the Government moved to stay the proceedings here.  (*See generally IAAB* ECF No. 63-1, 66; *Zakzok* ECF Nos. 51-1, 54.) This Court granted that motion as a matter of judicial economy, concluding that "the orderly course of justice requires that all three cases be stayed pending the Supreme Court's resolution of *Trump* v. *Hawaii* . . . not because factors of judicial economy are more important than the potential harm to Plaintiffs, but because the Court [was] convinced that" denial of a stay would "not necessarily mean that Plaintiffs will receive a faster resolution."  (Stay Op. at 15.)  The Court noted that "the

immediate litigation of a motion to dismiss, the next step in this case, would likely be wasted once the Supreme Court issues its ruling in *Trump* v. *Hawaii*." (*Id.*)

But the Court also explicitly recognized that by staying the case Plaintiffs would suffer substantial harm. The Court thus concluded that the "appropriate way to address the ongoing harm to Plaintiffs would be to proceed with the case on an expedited basis following the Supreme Court's decision . . . which may include steps such as shortening the typical time periods for briefing motions, responding to discovery requests, and completing all discovery." (*Id.* at 15-16.)

    **C.**    **This Court Denies the Government's Motion to Dismiss Plaintiffs' Constitutional Claims**

The *IAAB* and *Zakzok* Plaintiffs subsequently amended their complaints, (*IAAB* ECF No. 78; *Zakzok* ECF No. 62), and the *IRAP* Plaintiffs voluntarily dismissed certain of their statutory claims, (*IRAP* ECF No. 270). As amended, the complaints advance two categories of claims.

First, Plaintiffs allege that the Proclamation and the actions taken by the agencies implementing it violate the substantive and procedural requirements of the Administrative Procedures Act. (*See* Memorandum Opinion ("MTD Op.") at 9 (*IRAP* ECF No. 276; *IAAB* ECF No. 91; *Zakzok* ECF No. 70).) Second, Plaintiffs allege that the Proclamation violates the United States Constitution. (*See id.*) Specifically, all Plaintiffs allege that the Proclamation violates the Establishment Clause; the *IRAP* and *IAAB* Plaintiffs also allege that the Proclamation violates the Fifth Amendment guarantees to equal protection and due process; and the *IAAB* Plaintiffs further allege that the Proclamation violates the First Amendment's guarantees of freedom of speech and association.

In an order dated May 2, 2019, the Court granted the Government's motion to dismiss the APA claims but denied the motion to dismiss the constitutional claims. The Court rejected the Government's justiciability arguments, holding that Plaintiffs have standing. (*See* MTD Op. at

14-16.)   The Court also rejected the Government's argument that *Trump* v. *Hawaii* forecloses Plaintiffs' constitutional claims, explaining that "the highly deferential Rule 12(b)(6) standard" differs from the standard applied by the Supreme Court at the preliminary injunction stage.   (*See* MTD Op. at 38-41.)   The Court concluded that "Plaintiffs have put forward factual allegations sufficient to show that the Proclamation is not rationally related to the legitimate national security and information-sharing justifications identified in the Proclamation and therefore that it was motivated only by an illegitimate hostility to Muslims."   (MTD Op. at 38.)

The Government filed its answers on May 31, 2019.   (*IRAP* ECF No. 283; *IAAB* ECF No. 96; *Zakzok* ECF No. 75.)   Rather than proceeding with discovery, however, the Government now seeks an interlocutory appeal and stay of proceedings.   (*See* Defendants' Combined Motion for Certification of This Court's May 2, 2019 Memorandum Opinion and Order for Interlocutory Appeal and for a Stay of Discovery ("Govt. Mem.") (*IRAP* ECF No. 289; *IAAB* ECF No. 100; *Zakzok* ECF No. 79).)

## ARGUMENT

### I.   The Order Denying in Part the Government's Motion to Dismiss Does Not Warrant Interlocutory Appeal

Interlocutory appeal under 28 U.S.C. § 1292(b) is appropriate only when "exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of final judgement."   *Fannin* v. *CSX Trans., Inc.*, 873 F.2d 1438, 1989 WL 42583, at *2 (4th Cir. 1989) (unpublished).   Interlocutory appeals should generally be "avoided" because non-final judgments are "effectively and more efficiently reviewed together in one appeal."   *James* v. *Jacobson*, 6 F.3d 233, 237 (4th Cir. 1993); *see also Mohawk Indus., Inc.* v. *Carpenter*, 558 U.S. 100, 106 (2009) ("Permitting piecemeal, prejudgment appeals . . . undermines efficient judicial administration[.]" (quotation marks omitted)); *Firestone Tire & Rubber Co.* v. *Risjord*, 449 U.S.

368, 374 (1981) ("[T]he [final judgment] rule is in accordance with the sensible policy of avoid[ing] the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment." (quotation marks omitted)); *Butler* v. *DirectSAT USA LLC*, 307 F.R.D. 445, 452 (D. Md. 2015) (describing the "strong federal policy against piecemeal appeals" (quotation marks omitted)).  Because interlocutory review "should be used sparingly," the requirements of § 1292(b) "must be strictly construed." *United States ex rel. Michaels* v. *Agape Senior Cmty., Inc.*, 848 F.3d 330, 340 (4th Cir. 2017) (quotation marks omitted).

As this Court recently noted, a district court may certify an order for interlocutory appeal under § 1292(b) only on finding "(1) that the order involves a controlling question of law; (2) as to which there is substantial ground for difference of opinion; *and* (3) that an immediate appeal will materially advance the ultimate termination of the litigation." *Estate of Giron Alvarez* v. *Johns Hopkins Univ.*, No. 15-cv-950, 2019 WL 1779339, *1 (D. Md. Apr. 23, 2019) (emphasis added).  "The decision to certify an interlocutory appeal is firmly in the district court's discretion," but "[u]nless *all* of the statutory criteria are satisfied . . . the district court may not and should not certify" an appeal. *Butler*, 307 F.R.D. at 452.  And "even when the elements of section 1292(b) are satisfied, the district court retains unfettered discretion to deny certification." *Garber* v. *Office of the Comm'r of Baseball*, 120 F. Supp. 3d 334, 337 (S.D.N.Y. 2014) (quotation marks omitted).

Rather than addressing the three requirements for certification, the Government devotes the bulk of its brief to restating the arguments that it previously made—and that this Court rejected—in its motion to dismiss.  In support of that motion, the Government had argued that rational basis review is inappropriate, (Defendants' Combined Reply Memorandum in Support of Defendants' Motions to Dismiss at 12-13 (*IRAP* ECF No. 271; *IAAB* ECF No. 83; *Zakzok* ECF

No. 67)); that the Supreme Court has already found the Proclamation to satisfy rational basis review, (*id.* at 14-15); that Plaintiffs' allegations do not plausibly state a claim because they were considered in *Trump* v. *Hawaii*, (*id.* at 15-16); and that Plaintiffs cannot state due process and Establishment Clause claims when they have not themselves been denied entry, (Defendants' Combined Memorandum in Support of Defendants' Motions to Dismiss at 25–28 (*IRAP* ECF No. 265-1; *IAAB* ECF No. 81-1; *Zakzok* ECF No. 65-1)).  The Government now sings the same refrain. (*See* Govt. Mem. at 12-21.)  While it is clear that the Government dislikes this Court's ruling on the motion to dismiss and wishes that the Supreme Court's ruling in *Trump* v. *Hawaii* would foreclose all further litigation concerning the Proclamation, "a party's disagreement with the decision of the district court, no matter how strong," is irrelevant to the § 1292(b) analysis. *Alvarez*, 2019 WL 1779339, at *1.

The Government has failed to show that there is substantial ground for difference of opinion, that an immediate appeal would materially advance the ultimate termination of the litigation, or that the Court's order presents the kind of exceptional circumstances in which the Court should exercise its discretion to deviate from the normal rule against piecemeal review.  In fact, other courts have recently rejected the Government's nearly identical arguments seeking interlocutory appeals in major challenges to presidential action.  *See Blumenthal* v. *Trump*, No. 17-cv-1154, 2019 WL 2603864, *3 (D.D.C. June 25, 2019) (denying certification based, in part, on parties' willingness to enter into expedited discovery and briefing schedule); *Dist. of Columbia* v. *Trump*, 344 F. Supp. 3d 828 (D. Md. 2018).  This Court should deny certification as well.

## A.    Any Ground for Difference of Opinion Is Not Substantial

The substantial-ground requirement presents a high bar to certification.  The "'mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient.'" *Alvarez*, 2019 WL 1779339, at *1 (quoting *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996)).  So is a

"[l]ack of unanimity among courts" or "lack of relevant authority." *Id.* Instead, courts certify interlocutory appeals only "'where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.'" *Id.* (quoting *Couch* v. *Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)). This standard is appropriately strict; if it were otherwise, the final-judgment rule would be gutted and litigants could regularly obtain piecemeal review of new legal issues.

The Government's motion does not meet this strict standard. It points to no circuit split regarding the issues that this Court's order resolved—and there is none. Nor does the issue on which review is sought turn on complicated questions of foreign law.[2] Instead, the Government merely disagrees with this Court's ruling that the vacatur of the preliminary injunction in *Trump* v. *Hawaii* did not foreclose further litigation in these cases on the merits. But that does not show a novel or difficult question of first impression. After all, the Supreme Court has already made clear that rulings on a preliminary injunction do not foreclose further litigation on the merits. *See Benisek* v. *Lamone*, 138 S. Ct. 1942, 1945 (2018); *see also Metro. Reg'l Info. Sys., Inc.* v. *Am. Home Realty Network, Inc.*, 948 F. Supp. 2d 538, 551 (D. Md. 2013) ("In general, a court's decisions at the preliminary injunction phase do not constitute law of the case in further proceedings and do not limit or preclude the parties from litigating the merits. . . . [T]his is true for

---

[2] The Government suggests that the district court in *Alharbi* v. *Miller*, 368 F. Supp. 3d 527 (E.D.N.Y. 2019), disagrees with this Court's analysis. But the *Alharbi* opinion contains just a single conclusory sentence without analysis of what *Trump* v. *Hawaii* did or did not foreclose; the underlying case there only incidentally challenged the Proclamation; and in all events, that decision does not give rise to a substantial difference of opinion in the courts under § 1292(b). *See United States ex rel. A1 Procurement, LLC* v. *Thermcor, Inc.*, 173 F. Supp. 3d 320, 324 (E.D. Va. 2016) ("A single case from a different circuit" is "not enough to show a substantial ground for difference of opinion.").

the reason that a preliminary injunction decision is just that: preliminary." (quotation marks and citations omitted)).

The only novelty that the Government purports to identify is "the direct application of new, on-point Supreme Court authority" to Plaintiffs' factual allegations. (Govt. Mem. at 7.) But district courts must routinely apply recent Supreme Court precedent in new settings. If that were enough for interlocutory review, § 1292's narrow exception would quickly become the rule. Instead, district courts regularly and quite properly deny certification of even novel legal issues because they are fully competent to decide those questions. *See, e.g.*, *Goodman* v. *Archbishop Curley High Sch., Inc.*, 195 F. Supp. 3d 767, 773, 776 (D. Md. 2016) (denying certification despite "novel" legal question because there was "no case authority demonstrating a substantial ground for difference of opinion"); *cf. Alvarez*, 2019 WL 1779339, at *1 (noting that a "question of first impression" is "insufficient" for interlocutory review). After all, if the Supreme Court had expected the courts simply to stay further proceedings until it could also decide whether Plaintiffs' claims could go forward at all, it would have saved everybody the trouble and decided the question then and there. Or the Supreme Court could have suggested that the district court "consider certifying that ruling for interlocutory appeal," as it did in one of the cases on which the Government seeks to rely. *See In re United States*, 138 S. Ct. 443, 445 (2017) (concerning the termination of the Deferred Action for Childhood Arrivals program). That it did not is telling.

Interlocutory review is appropriate when "courts themselves disagree as to what the law is," not when a party disagrees with the Court's ruling. *In re Nichols*, No. 14-cv-625, 2014 WL 4094340, at *3 (D. Md. Aug. 15, 2014) (quotation marks omitted) (requiring "a difference of opinion . . . *between courts*"). Indeed, even "a disagreement with one circuit" is "not enough to meet

the high standard for a substantial ground for difference of opinion." *United States ex rel. A1 Procurement, LLC* v. *Thermcor, Inc.*, 173 F. Supp. 3d 320, 324 (E.D. Va. 2016).

But there is no disagreement here: None of the arguments that the Government advances were adopted by the Supreme Court in *Trump* v. *Hawaii*.  Rather, the Supreme Court refused to restrict its review to the face of the Proclamation, to abandon rational basis review, or to deny those plaintiffs' claims on the ground that they were not themselves denied visas.  And the en banc Fourth Circuit has previously rejected the Government's position on both issues.  *See IRAP* v. *Trump*, 883 F.3d 233, 263–65 (4th Cir. 2018) (en banc) (standard of review); *id.* at 258–62 (standing).  The theoretical possibility that the court of appeals might now adopt a different approach is insufficient to warrant interlocutory review.

The Government's remaining argument is that *Trump* v. *Hawaii* forecloses any possibility that Plaintiffs might succeed under rational basis review.  (Govt. Mem. at 15–19.)  But this Court correctly noted that "at no point in *Hawaii II* did the Supreme Court state that its conclusion . . . in the context of a motion for preliminary injunction[] required dismissal of the Establishment Clause claim in either that case or the present case."  (MTD Op. at 40.)  Instead, the Supreme Court remanded for further proceedings.  *Trump* v. *Hawaii*, 138 S. Ct. at 2423.  This Court then applied the Supreme Court's precedent in *Trump* v. *Hawaii* to the allegations in the complaints based on the Fourth Circuit's clear guidance on how to balance Rule 12(b)(6)'s liberal pleading standard and the inquiry required under rational basis review.  *See Giarratano* v. *Johnson*, 521 F.3d 298, 303-04 (4th Cir. 2008).  That the case is of major political significance does not make it novel for purposes of § 1292(b).

The Government has made nearly identical arguments seeking interlocutory appeals in other major challenges to presidential action.  *See Blumenthal* v. *Trump*, No. 17-cv-1154, 2019

WL 2603864, *3 (D.D.C. June 25, 2019) (denying certification based, in part, on parties' willing-ness to enter into expedited discovery and briefing schedule); *Dist. of Columbia* v. *Trump*, 344 F. Supp. 3d 828 (D. Md. 2018).  These arguments failed there.  They should fail here as well.

> **B.      An Immediate Appeal Would Not Materially Advance the Ultimate Termina-tion of This Litigation**

Even if the first two requirements under § 1292(b) had been satisfied, "certification of an interlocutory appeal is appropriate only in exceptional situations in which doing so would avoid protracted and expensive litigation." *Alvarez*, 2019 WL 1779339, at *2 (quotation marks omitted). Although the Government posits that the court of appeals *may* provide "guidance about how discovery should proceed," (Govt. Mem. at 24), that is conjectural, at best.  After all, the issue of discovery would not be before the court of appeals at all.  In any event, this is simply not how the federal courts are supposed to work.  *See Fannin*, 1989 WL 42583, at *2; *Butler*, 307 F.R.D. at 452.  An interlocutory appeal here would only prolong this litigation.

If the Government's requests were both granted and this Court's well-reasoned denial of the Government's motion to dismiss were ultimately affirmed after several years of appellate liti-gation, the parties would be right back where they are now, with the case no closer to resolution— and Plaintiffs would continue suffering harm each and every day.  *See Dist. of Columbia*, 344 F. Supp. 3d at 837 (denying certification because "ultimate resolution of the case could be delayed significantly" by piecemeal appellate review).  Interlocutory appeal would also delay the case, however, even if discovery were *not* stayed.  The Government has already argued that the mere briefing of the instant motion justifies delaying discovery discussions. It would undoubtedly seek further delays at every turn during appellate proceedings.

The Government's view that an appeal would materially advance these cases depends, in other words, on its obtaining a complete victory on the merits and gaining full dismissal of these

cases.  Of course the Government thinks that it may win on appeal.  Every appellant does who files an appeal in good faith.  And every case involving denial of a motion to dismiss would conclude sooner if the denial were appealed and reversed.  But if that were enough, "every denial of a defendant's dispositive motion would merit an interlocutory appeal."  *Blumenthal*, 2019 WL 2603864, at *2 (quotation marks omitted).  The proper question is instead "whether an immediate appeal would *likely* and *materially* advance" the litigation.  *Id.* (quotation marks omitted).  As the Court's own order shows, the answer is no.

It is also far from clear why discovery in these cases would be unusually burdensome for the Government.  The Government regularly receives and processes Freedom of Information Act requests far more elaborate, and far more likely to result in voluminous results, than the discovery requests that are likely to arise here.  Also, Justice Kennedy's concurrence in *Trump* v. *Hawaii* accurately predicted that "if further proceedings" occurred, it "would be necessary to determine that any discovery and other preliminary matters would not themselves intrude on the foreign affairs power of the Executive."  138 S. Ct. at 2424.  Yet neither Justice Kennedy nor any other member of the Court even hinted that these foreign affairs issues would either preclude discovery outright or render further proceedings risky absent interlocutory appellate review.  Instead, the Court correctly assumed the district courts would be able to manage discovery as appropriate under the Federal Rules.  And as other courts have recently recognized, discovery in cases involving the President can occur on an abbreviated timeline.  *See Blumenthal*, 2019 WL 2603864, at *2–3.

The Government's argument for an interlocutory appeal really rests on the view that discovery would be unfair. Yet this Court has already recognized that the discovery burdens that the Government faces here are "not unfair" in light of its decision to adopt "a sweeping Proclamation

affecting millions of individuals."  (Stay Op. at 14.)  The Government thus cannot satisfy the requirement that interlocutory review materially advance the litigation.

### C.      Nothing Else About This Case Warrants Certification Either

The Government also suggests that certification is warranted because these cases are constitutionally and nationally significant.  But district courts routinely decline to certify decisions concerning constitutional issues and matters of presidential authority that the Government deems important or sensitive.  *See, e.g.*, *Blumenthal*, 2019 WL 2603864 (denying stay of discovery and § 1292(b) motion to certify orders interpreting the Emoluments Clause, finding that plaintiffs had standing to sue the President for violating the Clause, and holding that a remedial injunction was available); *Dist. of Columbia*, 344 F. Supp. 3d at 831-32 (denying motion to certify orders reaching similar conclusions).  A case does not present "truly extraordinary" circumstances under § 1292(b) just because it raises important issues going to the President's conduct.  *Dist. of Columbia*, 344 F. Supp. 3d at 842.  And even if it did, "that would favor certification only if all the criteria required by § 1292(b) are otherwise met."  *Id.*  Here, they are not.  Certification should be denied.

## II.      In Any Event, Discovery Should Not Be Stayed

Even if the Court were to grant certification, a stay of discovery would not be warranted.  By default, an order granting certification "shall not stay proceedings in the district court."  28 U.S.C. § 1292(b).  Whether to depart from that rule and grant a stay pending appeal is left to this Court's discretion.  *See Dist. of Columbia*, 344 F. Supp. 3d at 843 (allowing discovery to proceed in a case concerning the President's personal finances and business affairs) (citing David G. Knibb, *Fed. Court of Appeals Manual* § 5.6 (6th ed. 2018)); *see also Maryland* v. *Universal Elections, Inc.*, 729 F.3d 370, 375 (4th Cir. 2013) ("[A] request to stay proceedings calls for an exercise of the district court's judgment to balance the various factors relevant to the expeditious

and comprehensive disposition of the causes of action on the court's docket.") (internal quotation mark omitted).

"The proponent of a stay bears the burden of establishing its need." *Clinton* v. *Jones*, 520 U.S. 681, 708 (1997); *accord Williford* v. *Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983). And courts determining whether to issue a discretionary stay must balance three factors: "(1) the interest in judicial economy; (2) the hardship to the moving party if the action is not stayed; and (3) the potential damage or prejudice to the non-moving party." *Dist. of Columbia*, 344 F. Supp. 3d at 842-43; *see also IRAP* v. *Trump*, 323 F. Supp. 3d 726, 731 (D. Md. 2018) (same); *Mullins* v. *Suburban Hosp. Healthcare Sys., Inc.*, No. 16-cv-1113, 2017 WL 3023282, at *1 (D. Md. July 17, 2017) (same).[3]

The movant must demonstrate "clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford*, 715 F.2d at 127. The Government has failed to meet its burden.

### A.    A Stay Would Cause Substantial Harm to Plaintiffs

This Court has already recognized that Plaintiffs would suffer "significant" harm from any stay. (Stay Op. at 14.) The Government's unconstitutional policy has now been in place, in one form or another, for nearly two and a half years. Any further delay of this case would extend the

---

[3] Some courts in this Circuit have applied a slightly different test, requiring that a party seeking a stay show "(1) that [she] will likely prevail on the merits of the appeal, (2) that [she] will suffer irreparable injury if the stay is denied, (3) that other parties will not be substantially harmed by the stay, and (4) that the public interest will be served by granting the stay." *Nero* v. *Mosby*, No. 16-cv-1304, 2017 WL 1048259, at *1 (D. Md. Mar. 20, 2017) (alterations in original) (quoting *Long* v. *Robinson*, 432 F.2d 977, 979 (4th Cir. 1970)); *see also, e.g.*, *Eshelman* v. *Puma Biotechnology, Inc.*, No. 7:16-cv-18, 2017 WL 9440363, at *4 (E.D.N.C. May 24, 2017) (applying same four-factor test). The Fourth Circuit does not appear to have determined which test applies in these circumstances.

The two tests demand similar analyses and, here, lead to the same result.

grave and ongoing harm suffered by Plaintiffs and heighten the risk that some Plaintiffs—or the family members from whom they are separated—may not live long enough to see their claims resolved and their families reunited.  (*See Zakzok* ECF No. 53, at 7-10.)

For instance, *Zakzok* Plaintiff Eblal Zakzok's daughter, who is currently living in Turkey where Syrian refugees are regularly targeted by criminals, is separated from her four siblings and parents now living in Ohio.  (*See Zakzok* ECF No. 62, ¶ 69.)  *IAAB* Plaintiff Jane Doe #5 and her husband—who are eighty-one and ninety-two years old, respectively—remain separated from their son, who lives in Iran.  (*See IAAB* ECF No. 26-7.)  *IRAP* Plaintiff Jane Doe #2 remains separated from her sister and two young nephews, who are Syrian refugees living in a refugee hotel on the border of Saudi Arabia and Yemen, where they are under constant threat from nearby rocket fire and are exploited by the hotel proprietor.  (*IRAP* ECF No. 203, ¶¶ 333–34.)  Moreover, many of the individual Plaintiffs continue to fear that family members who are refugees in other countries could be deported to countries where they would be subject to persecution or torture. (*See Zakzok* ECF No. 6-2, 6-5; *IAAB* ECF No. 26-4.)  The individual Plaintiffs also continue to suffer from the stigma and disparagement stemming from the Proclamation, which they feel is an attack on their religion and national origins.  (*See Zakzok* ECF No. 6-2, 6-3; *IAAB* ECF No. 26-7, 26-8.)  The members and clients of the organizational Plaintiffs are in similar situations.  Until Plaintiffs have an opportunity to litigate the merits of their claims, the severity of those harms will only worsen.

The risks posed by delay are not merely hypothetical.  The Proclamation has caused concrete injuries to numerous citizens and permanent residents who, like Plaintiffs, have been wrongfully prevented from reuniting with their loved ones.  For some, reunification is no longer possible.  Two-year-old American citizen Abdullah Hassan, for example, was separated from his

Yemeni mother while he received treatment in the United States for a rare brain condition; his mother was denied a visa for over a year before finally being granted a waiver, but Abdullah lost consciousness before she arrived and died nine days later.  *See* Kaelyn Forde, *2-Year-Old Boy Whose Yemeni Mother Fought Trump's Travel Ban To Be With Him Has Died*, ABC NEWS (Dec. 29, 2018, 6:16 PM), https://abcn.ws/2s2cvzs.  Last year, U.S. citizen Mahmood Salem committed suicide after his wife and five children in Yemen were denied visas.  *See* Mallory Moench, *U.S. Citizen's Family Was Denied Visa under Trump's Travel Ban.  Then He Died by Suicide*, NBC NEWS (July 28, 2018, 5:12 AM), https://nbcnews.to/2mRckEM.  And countless others have family members stranded in dangerous and war-torn countries where their lives are at risk.  *See, e.g.*, Michael Daly, *She Escaped the Hell of Yemen, but Her 9-Year-Old Son is Stranded*, THE DAILY BEAST (Nov. 27, 2019, 10:42 AM), https://bit.ly/2LwrWLd (two children of a Yemeni green-card holder were awaiting the results of their visa applications when one of the children—who was seven years old—was killed in an accident in Yemen).

This Court has recognized that "[t]hese 'human aspects' of the potential impact of a stay upon Plaintiffs are of 'particular significance in balancing the competing interests of the parties.'" (Stay Op. at 14 (quoting *Williford*, 715 F.2d at 127-28).)  The Court has already found that the risk of harm to Plaintiffs weighs against a stay.  The passage of time has only compounded the injuries that will result from further delay.  This factor therefore weighs heavily against staying discovery.

### B.     Proceeding to Discovery Would Not Result in Hardship to the Government

"'[I]f there is even a fair possibility that the stay will work damage to some one else,' the party seeking the stay 'must make out a clear case of hardship or inequity.'"  *Lockyer* v. *Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005) (internal alteration omitted) (quoting *Landis* v. *N. Am. Co.*, 299 U.S. 248, 255 (1936)).  The Government cannot show any hardship or inequity.

The Government complains that "the broad discovery Plaintiffs are likely to pursue would be extraordinarily burdensome, would likely generate numerous privilege disputes, and would place this Court on a collision course with the presidential communications privilege and/or the President's more general Executive Privilege." (Govt. Mem. at 23.) But the obligation to litigate a case in the ordinary course is not a "hardship" sufficient to justify a stay. *See Dist. of Columbia*, 344 F. Supp. 3d at 843 ("mere injuries, however substantial, in terms of money, time, and energy necessarily expended in the absence of a stay, are not enough") (quoting *Long*, 432 F.2d at 980); *Eshelman*, 2017 WL 9440363, at *4 ("[M]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury.") (quoting *Renegotiation Bd.* v. *Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974)); *Castaneda* v. *Molinar*, No. 07-cv-7241, 2008 WL 9449576, at *4 (C.D. Cal. May 20, 2008) (noting that burdensome discovery is not a hardship sufficient to justify a stay pending appeal). After all, parties are already protected against unduly burdensome or otherwise improper discovery by Rule 26. A moving party typically can demonstrate hardship only where it has shown that it will bear a burden or suffer a consequence that it would not otherwise bear in the ordinary course of litigation. *See, e.g.*, *E & I Holdings, LLC* v. *Bellmari Trading USA, Inc.*, No. 2:18-cv-00484, 2018 WL 5624269, at *1 (S.D. W. Va. Oct. 30, 2018); *Impulse Monitoring, Inc.* v. *Aetna Health, Inc.*, No. 3:14-cv-02041, 2014 WL 4748598, at *1 (D.S.C. Sept. 23, 2014).

Moreover, this Court has already found that "the Government has the resources to litigate without significant hardship or prejudice." (Stay Op. at 14.) And because "the Government has unilaterally adopted a sweeping Proclamation affecting millions of individuals[,] . . . it is not unfair to expect the Government would be required to devote significant resources to litigation defending its action." (Stay Op. at 14.)

None of the Government's arguments compels a different conclusion now.  It rehashes assertions of hardship that the Court rejected in the earlier Stay Opinion—assertions that subsequent developments have further weakened.  While the Government previously argued that it would be unduly burdened by a need both to litigate a motion to dismiss and to conduct discovery, the Court has since resolved the Government's motion to dismiss, limiting the scope of Plaintiffs' remaining claims.  And following the Supreme Court's decision in *Trump* v. *Hawaii*, the Court is not presented with the kind of legal uncertainties that might complicate the discovery process.  Instead, the Government is now in the same position as any other defendant whose motion to dismiss is denied: it must begin discovery.

### C.      The Requested Stay Would Not Promote Judicial Economy

Recognizing that the first two factors weigh heavily against its position, the Government focuses its argument on judicial economy.  But a stay here would only *hinder* judicial economy because the discovery disputes that are the next step in these cases will exist regardless of the Government's proposed appeal.

The mere possibility that the Fourth Circuit will rule wholly in the Government's favor is decidedly *not* a ground to justify a stay of discovery.  *See, e.g.*, *Alvarez*, 2019 WL 1779339, at *2 (certifying interlocutory appeal but declining to stay proceedings, even though the Fourth Circuit's decision could "result in the dismissal of all claims against all defendants"); *Coalition for Equity & Excellence in Md. Higher Educ.* v. *Md. Higher Educ. Comm'n*, No. 06-cv-2773, 2015 WL 4040425, at *6-7 (D. Md. June 29, 2015) (certifying interlocutory appeal but declining to stay proceedings, even though reversal on appeal "could advance the litigation by ending it").  If the prospect of a meritorious appeal were enough to justify a stay, stays would always be granted despite § 1292(b)'s language that an interlocutory appeal "shall not stay proceedings in the district court" absent an affirmative ruling to the contrary.  Courts have rejected that position and instead

made clear that stays of discovery are disfavored.  *See, e.g.*, *Fed. Ins. Co.* v. *S. Lithoplate, Inc.*, No. 5:12-cv-793, 2013 WL 4045924, at *1 (E.D.N.C. Aug. 8, 2013) ("Motions to stay are generally disfavored because delaying discovery may cause case management problems as the case progresses.") (citations omitted).  And while the Government's judicial-economy argument hinges on the possibility that the Fourth Circuit's ruling might terminate this litigation, (*see* Govt. Mem. at 21-22, 24), that outcome is unlikely for all the reasons stated above.  Courts regularly deny stays where the pending appeal is unlikely to succeed.  *See, e.g.*, *Nero*, 2017 WL 1048259, at *1-2 (denying stay of discovery pending interlocutory appeal in part because movant was not likely to prevail on appeal); *Eshelman*, 2017 WL 9440363, at *4 (same).

In relying on the Court's prior stay decision, the Government ignores critical features that render the logic of that earlier decision inapplicable here.  The Court previously declined to allow briefing on a motion to dismiss "because one or more parties would undoubtedly and justifiably seek re-litigation of the motion in light of the new guidance" from the Supreme Court.  (Stay Op. at 12.)  Here, in contrast, the Government's proposed appeal does not concern the substance of any potential discovery dispute.  As a result, there will be no need to re-litigate any issues this Court may resolve during discovery.

The situation now is different from the situation that the Court encountered previously in connection with the Government's earlier motion for a stay.  While the Supreme Court's imminent decision in *Trump* v. *Hawaii* was likely to require re-briefing (or even to render moot) any motions that might then have been pending, the disputes that the Government now seeks to delay are un-likely to be affected by the Government's proposed appeal—and are not the sort of proceedings that normally should be delayed regardless.  Judicial economy weighs in favor of beginning the discovery process now and proceeding on an expedited basis.

19

Because the Court has clarified the contours of the case by resolving the Government's motion to dismiss, the next step here—as in all civil litigation—is to proceed to discovery; judicial economy would not be served by a stay. Any potential efficiency gains that a stay might yield are insufficient when weighed against the substantial and irreversible harms that Plaintiffs will suffer as a result of further delay. The Government has, meanwhile, failed to demonstrate that it will suffer *any* cognizable hardship in the absence of a stay. So the motion should be denied.

## CONCLUSION

The Government seeks to avoid the routine obligations of litigation based solely on the ground that it would be burdened by its participation in the judicial process.  This falls far short of the legal standard for either certification or a stay of discovery and is a further demonstration of the Government's indifference to the ongoing harm inflicted by the Proclamation.  Plaintiffs respectfully request that the Court deny Defendants' request for certification and immediately issue a scheduling order permitting discovery to commence.

Dated: July 3, 2019

Respectfully submitted,

    /s/ *Steven C. Herzog*

Faiza Patel*
    Brennan Center for Justice
    at NYU School of Law
    120 Broadway, Suite 1750
    New York, NY 10271
    Tel.: (646) 292-8335
    Fax: (212) 463-7308
    patelf@brennan.law.nyu.edu

Jethro Eisenstein*
    Profeta & Eisenstein
    45 Broadway, Suite 2200
    New York, New York 10006
    Tel.: (212) 577-6500
    Fax: (212) 577-6702
    jethro19@gmail.com

 Lena F. Masri (20251)*
 Gadeir Abbas (20257)#
 Justin Sadowsky†
    CAIR Legal Defense Fund
    453 New Jersey Avenue SE
    Washington, D.C. 20003
    Tel.: (202) 488-8787
    Fax: (202) 488-0833
    lmasri@cair.com
    gabbas@cair.com
    jsadowsky@cair.com

Charles E. Davidow (Bar # 06516)
    Paul, Weiss, Rifkind, Wharton &
    Garrison LLP
    2001 K Street NW
    Washington, DC 20006-1047
    Tel.: (202) 223-7300
    Fax: (202) 223-7420
    cdavidow@paulweiss.com

Robert A. Atkins*
Liza Velazquez *
Andrew J. Ehrlich*
Steven C. Herzog*
Thomas Christman Rice*
    Paul, Weiss, Rifkind, Wharton &
    Garrison LLP
    1285 Avenue of the Americas
    New York, NY 10019-6064
    Tel.: (212) 373-3000
    Fax: (212) 757-3990
    ratkins@paulweiss.com
    lvelazquez@paulweiss.com
    aehrlich@paulweiss.com
    sherzog@paulweiss.com
    tcrice@paulweiss.com

*Counsel for Zakzok Plaintiffs*

21

Sirine Shebaya (Bar # 07191)
Nimra Azmi*
MUSLIM ADVOCATES
P.O. Box 34440
Washington, D.C. 20043
Tel: (202) 897-2622
Fax: (415) 765-1774
sirine@muslimadvocates.org
nimra@muslimadvocates.org

Richard B. Katskee (Bar # 27636)
AMERICANS UNITED FOR
SEPARATION OF CHURCH AND STATE
1310 L St. NW, Ste. 200
Washington, D.C. 20005
Tel: (202) 466-3234
Fax: (202) 466-3353
katskee@au.org

_____/s/_____
Mark H. Lynch (Bar # 12560)
Mark W. Mosier*
Marianne F. Kies (Bar # 18606)
COVINGTON & BURLING LLP
One City Center
850 10th Street, NW
Washington, D.C. 20001
Tel: (202) 662-6000
Fax: (202) 662-6302
mlynch@cov.com
mmosier@cov.com
mkies@cov.com

Karun Tilak*
COVINGTON & BURLING LLP
Salesforce Tower, 415 Mission Street
San Francisco, CA 94105-2533
Tel: (415) 591-6000
Fax: (415) 591-6091
ktilak@cov.com

Kathryn E. Cahoy*
COVINGTON & BURLING LLP
333 Twin Dolphin Dr., Suite 700
Redwood Shores, CA 94065
Tel: (650) 632-4735
Fax: (650) 632-4800
kcahoy@cov.com

*Counsel for IAAB Plaintiffs*

Justin B. Cox (Bar No. 17550)
International Refugee Assistance Project
PO Box 170208
Atlanta, GA 30317
Tel: (516) 701-4233
Fax: (212) 533-4598
jcox@refugeerights.org

Mariko Hirose*
Linda Evarts*
Kathryn Claire Meyer*
International Refugee Assistance Project
One Battery Park Plaza, 4th Floor
New York, New York 10004
Tel: (516) 701-4620
Fax: (212) 533-4598
mhirose@refugeerights.org
levarts@refugeerights.org
kmeyer@refugeerights.org

Melissa Keaney*
International Refugee Assistance Project
PO Box 2291
 Fair Oaks, CA 95628
Tel: (916) 546-6125
Fax: (212) 533-4598
mkeaney@refugeerights.org

Max S. Wolson (Bar # 20914)
Esther Sung*
National Immigration Law Center
3450 Wilshire Boulevard, # 108-62
Los Angeles, CA 90010
Tel: (213) 639-3900
Fax: (213) 639-3911
wolson@nilc.org
sung@nilc.org

_____/s/_____
Omar C. Jadwat*
Lee Gelernt*
Hina Shamsi*
Hugh Handeyside*
David Hausman*
American Civil Liberties Union
Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2600
Fax: (212) 549-2654
ojadwat@aclu.org
lgelernt@aclu.org
hshamsi@aclu.org
hhandeyside@aclu.org
dhausman@aclu.org

Cecillia D. Wang*
Cody H. Wofsy*
Spencer E. Amdur*
American Civil Liberties Union Foundation
39 Drumm Street
San Francisco, CA 94111
Tel: (415) 343-0770
Fax: (415) 395-0950
cwang@aclu.org
cwofsy@aclu.org
samdur@aclu.org

David Cole*
Daniel Mach*
Heather L. Weaver*
American Civil Liberties Union
Foundation
915 15th Street NW
Washington, DC 20005
Tel: (202) 675-2330
Fax: (202) 457-0805
dcole@aclu.org
dmach@aclu.org
hweaver@aclu.org

David Rocah (Bar No. 27315)
Deborah A. Jeon (Bar No. 06905)
Sonia Kumar (Bar No. 07196)
Nicholas Taichi Steiner (Bar No. 19670)
American Civil Liberties Union
Foundation of Maryland
3600 Clipper Mill Road, Suite 350

Baltimore, MD  21211
Tel: (410) 889-8555
Fax: (410) 366-7838
jeon@aclu-md.org
rocah@aclu-md.org
kumar@aclu-md.org
steiner@aclu-md.org

*Counsel for IRAP Plaintiffs*

\* *Pro hac vice*.
† Admission forthcoming (swear-in date August 9).
# Licensed in VA, not in D.C.  Practice limited to federal matters.

## **CERTIFICATE OF SERVICE**

I certify that on July 3, 2019, I caused a copy of the foregoing document to be sent to all

parties receiving CM/ECF notices in this case.


_/s/ Steven C. Herzog_____
Steven C. Herzog